**INDUSTRIAL TRUCK ASSOCIATION, INC., a District of Columbia corporation, and Mitsubishi Caterpillar Forklift America, Inc., a Delaware Corporation, Plaintiffs,**

v.

**Dr. Carol HENRY, Director of the Office of Environmental Health Hazard Assessment, and Daniel D. Lungren, Attorney General for the State of California, Defendants.**

Civil No. 94–1738–R (LSP).

United States District Court, S.D. California.

June 21, 1995.

Gary E. Cross, Dunaway & Cross, Washington, DC, William N. Kammer, Gray, Cary, Ware & Freidenrich, San Diego, CA, for plaintiffs.

Dennis A. Ragen, Deputy Attorney General, San Diego, CA, Carol R. Brophy, McKenna & Cuneo, Los Angeles, CA, for defendants.

ORDER GRANTING DEFENDANTS' MOTION TO DISMISS AND DENYING PLAINTIFFS' MOTION FOR SUMMARY JUDGMENT

RHOADES, District Judge.

The present case is before the Court on Defendants' motion to dismiss and Plaintiffs' motion for summary judgment. The Court heard oral argument on both motions on April 24, 1995. The Court also accepted *amicus curie* briefs filed on behalf of the organizations As You Sow and Coalition of Manufacturers for Responsible Administration of Proposition 65. The Court subsequently ordered further briefing from Plaintiffs and Defendants regarding the Supreme Court case *Freightliner Corp. v. Myrick*, —— U.S. ——, 115 S.Ct. 1483, 131 L.Ed.2d 385 (1995).

The Complaint filed by Plaintiffs seeks a declaratory judgment that the California Safe Drinking Water and Toxic Enforcement Act of 1986 ("Proposition 65") and its implementing regulations are preempted by the federal Occupational Safety and Health Act ("OSH Act") insofar as Proposition 65 and the regulations impose warning requirements on manufacturers and distributors of industrial trucks. After considering the historic presumption against finding preemption in areas of safety and health, rules of statutory interpretation, and the congressional intent in providing for preemption in the OSH Act, the Court concludes that no federal OSH Act standard exists with regard to whether industrial truck manufacturers or distributors must provide toxic warnings. The federal standards consequently cannot preempt Proposition 65 or the Proposition 65 regulations insofar as either the state statute or regulations require truck manufacturers or distributors to provide warnings.

Plaintiffs' motion for summary judgment is DENIED. Defendants' motion to dismiss is GRANTED.

## I. Background

The Occupational Safety and Health Act ("OSH Act") authorizes the Secretary of Labor to "set mandatory occupational safety and health standards applicable to businesses affecting interstate commerce." 29 U.S.C. § 651(b)(3). Section 18 of the OSH Act provides that the OSH Act and the regulations promulgated pursuant to the OSH Act preempt state-law occupational safety and

health requirements on issues that are subject to a federal standard unless the state law requirement is issued pursuant to a state plan that has been submitted to and approved by the Secretary of the U.S. Department of Labor. 29 U.S.C. § 667(a)–(c); *Gade v. National Solid Wastes Management Association,* 505 U.S. 88, 112 S.Ct. 2374, 120 L.Ed.2d 73 (1992).

One standard promulgated under the OSH Act is the Federal Hazard Communication Standard ("HCS"), 29 C.F.R. § 1910.1200 (1994). The preamble to the HCS provides that the HCS is

> intended to address comprehensively the issue of evaluating the potential hazards of chemicals, and communicating information concerning hazards and appropriate protective measures to employees, and to preempt any legal requirements of a state, or political subdivision of a state, pertaining to this subject.

29 C.F.R. § 1910.1200(a)(2). The HCS applies to "manufacturers," "importers," and "distributors" of chemicals and "employers." 29 C.F.R. § 1910.1200(b). Chemical manufacturers, importers, and distributors and employers are required to provide warnings to employees regarding the dangers associated with hazardous chemicals.

On November 4, 1986, California voters passed Proposition 65, known as the Safe Drinking Water and Toxic Enforcement Act of 1986. The substance of Proposition 65 is similar to the provisions of the federal HCS. The "warning requirement" of Proposition 65 prohibits "person[s] in the course of doing business" from "knowingly and intentionally expos[ing] any individual to a chemical known to the state to cause cancer or reproductive toxicity without first giving clear and reasonable warning to such individual." Cal. Health & Safety Code § 25249.6.

Some of the regulations implementing Proposition 65 are promulgated by the Office of Environmental Health Hazard Assessment ("OEHHA"), and are recorded in Title 22 of the California Code of Regulations ("the Title 22 regulations"). The Title 22 regulations establish specific means of compliance with Proposition 65 warning requirements for three types of exposure: consumer produce exposures, occupational exposures, and environmental exposures. Cal.Code Regs. tit. 22, § 12601(b)–(d). The regulations define "occupational exposure" as "an exposure, in the workplace of the employer causing the exposure, to any employee." Cal.Code Regs. tit. 22, § 12601(c).

California did not submit Proposition 65 or the Title 22 regulations to OSHA for approval as part of the State Plan until ordered to do so by the California Court of Appeal. On July 12, 1990, the California Court of Appeal issued a peremptory writ ordering the California Standards Board to incorporate the Proposition 65 occupational warning requirements into the State Plan. *California Labor Fed'n v. Occupational Safety and Health Standards Bd.,* 221 Cal.App.3d 1547, 271 Cal. Rptr. 310 (1990).[1] The Standards Board complied with the state court's order by directing the California Occupational Safety and Health Standards Board ("Cal–OSHA") to promulgate what is now Title 8, Section 5194(b)(6) of the California Code of Regulations. Section 5194(b)(6) requires compliance with Proposition 65 warning requirements. Cal.Code Regs. tit. 8, § 5194(b)(6). The Standards Board incorporated Section 5194(b)(6) into the State Plan on November 21, 1991.

After reviewing Section 5194(b)(6), OSHA concluded that the State Plan provisions are at least as effective as the federal standards and does not conflict with the federal standards, but has not granted final approval of the State Plan. The parties agree, however, that the State may enforce the provisions of the State Plan that are still pending OSHA approval.

1. The California Appellate Court in *California Labor Federation* decided the issue of whether Proposition 97 required the California OSH Standards Board to include the provisions of Proposition 65 in the State Plan to be presented to OSHA. Proposition 97, passed in 1988, specified that "[t]he state plan shall be consistent with the provisions of state law governing occupational safety and health." Cal.Labor Code § 50.7. The *California Labor Federation* Court concluded that Proposition 97 required the State Standards Board to include the provisions of Proposition 65 in the State Plan.

Plaintiffs Industrial Truck Association and Mitsubishi Caterpillar Forklift America, Inc. filed the present action on November 14, 1994. Plaintiffs seek a declaratory judgment that Proposition 65 and the Title 22 regulations are preempted by federal law insofar as either requires manufacturers and distributors of industrial trucks to provide warnings about occupational exposures to hazardous substances, (Compl. at ¶¶ 31, 32, B.) Plaintiffs also seek an injunction permanently enjoining Defendants ("the State") from enforcing Proposition 65 or the Title 22 regulations to require manufacturers and distributors of industrial trucks to provide the warnings. (Compl. at 10:–11.)

The parties dispute two basic issues: (1) whether a federal standard exists that preempts the warning requirement of Proposition 65 as applied to manufacturers; and (2) whether Section 5194(b)(6) incorporates the general requirements included in Proposition 65 and the Title 22 regulations, thereby avoiding preemption of the general warning requirement.

## II. Legal Standards

### A. The Legal Standard for Dismissal Under Rule 12(b)(6)

On a motion to dismiss for failure to state a claim upon which relief can be granted under Rule 12(b)(6), the complaint is construed in the light most favorable to the plaintiff, and its allegations are taken as true. *United States v. Gaubert,* 499 U.S. 315, 327, 111 S.Ct. 1267, 1276, 113 L.Ed.2d 335 (1991); *McKinney v. De Bord,* 507 F.2d 501, 503 (9th Cir.1974). A motion to dismiss is generally viewed with disfavor, and only rarely granted. *United States v. Redwood City,* 640 F.2d 963, 966 (9th Cir.1981). Factual or legal conclusions, inferences, or deductions, however, are not given a presumption of truthfulness. *Western Mining Council v. Watt,* 643 F.2d 618, 624 (9th Cir.), *cert. denied,* 454 U.S. 1031, 102 S.Ct. 567, 70 L.Ed.2d 474 (1981). In reviewing a complaint, a court should let the claims stand "unless it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief." *Conley v. Gibson,* 355 U.S. 41, 45, 78 S.Ct. 99, 102, 2 L.Ed.2d 80 (1957).

### B. Legal Standard for Summary Judgment Under Rule 56

Rule 56(c) of the Federal Rules of Civil Procedure provides that summary judgment is appropriate if the "pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." One of the principal purposes of the rule is to dispose of factually unsupported claims or defenses. *Celotex Corp. v. Catrett,* 477 U.S. 317, 325, 106 S.Ct. 2548, 2553–54, 91 L.Ed.2d 265 (1986). As noted by the Supreme Court, "[s]ummary judgment procedure is properly regarded not as a disfavored procedural shortcut, but rather as an integral part of the Federal rules as a whole, which are designed 'to secure the just, speedy and inexpensive determination of every action.'" *Celotex Corp.,* 477 U.S. at 327, 106 S.Ct. at 2555 (quoting Fed.R.Civ.P. 1).

In considering a motion for summary judgment, the Court must examine all the evidence in the light most favorable to the nonmoving party. *United States v. Diebold, Inc.,* 369 U.S. 654, 655, 82 S.Ct. 993, 994, 8 L.Ed.2d 176 (1962). A moving party who bears the burden of proof at trial is entitled to summary judgment only when the evidence indicates that no genuine issue of material fact exists. Fed.R.Civ.P. 56(c); *Celotex,* 477 U.S. at 324, 106 S.Ct. at 2553 (1986).

Once the moving party meets the requirement of Rule 56 by either showing that no genuine issue of material fact remains, the burden shifts to the party resisting the motion, who "must set forth specific facts showing that there is a genuine issue for trial." *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 256, 106 S.Ct. 2505, 2514, 91 L.Ed.2d 202 (1986). It is not enough for the party opposing a properly supported motion for summary judgment to "rest on mere allegations or denials of his pleadings." *Id.* Genuine factual issues must exist that "can be resolved only by a finder of fact because they

may reasonably be resolved in favor of either party." *Id.* at 250, 106 S.Ct. at 2511.

To make such a showing, the nonmoving party must go beyond the pleadings to designate specific facts showing that there is a genuine issue for trial. *Celotex,* 477 U.S. at 325, 106 S.Ct. at 2553–54. Such evidence need not be in a form admissible at trial to avoid summary judgment. *Id.* The moving party is entitled to judgment as a matter of law if the nonmovant fails to make a sufficient showing of an element of its case with respect to which it has the burden of proof. *Id.*

### III. The Question Posed

As mentioned above, the parties pose two separate questions for this Court to address: (1) whether a federal law or regulation exists that preempts Proposition 65 and the Title 22 regulations as applied to industrial truck manufacturers or distributors; and (2) whether the general warning requirement of Proposition 65 or the Title 22 regulations is incorporated into the State Plan and therefore avoids preemption. If no federal law or regulation exists that addresses the issue of whether the truck manufacturers or distributors must provide a warning, then preemption is not possible and the Court need not address the second question posed by the parties.

As explained below, no federal standard exists which addresses whether industrial truck manufacturers or distributors must provide warnings regarding toxic chemicals. Consequently, preemption is not possible and the Court need not reach the second question posed by the parties.

In *Gade v. National Solid Wastes Management Association,* 505 U.S. 88, 112 S.Ct. 2374, 120 L.Ed.2d 73 (1992), the Supreme Court established that "the OSH Act preempts all state 'occupational safety and health standards relating to any occupational safety or health issue with respect to which a Federal standard has been promulgated.'" *Gade,* at 103, 111, 112 S.Ct. at 2386, 2390 (quoting 29 U.S.C. § 667(b)).

One standard promulgated under the OSH Act is the Federal Hazard Communication Standard ("HCS"), 29 C.F.R. § 1910.1200 (1994). The preamble to HCS provides that the HCS is

> intended to address comprehensively the issue of evaluating the potential hazards of chemicals, and communicating information concerning hazards and appropriate protective measures to employees, and to preempt any legal requirements of a state, or political subdivision of a state, pertaining to this subject.

29 C.F.R. § 1910.1200(a)(2).

The preamble establishes that the HCS is meant to preempt all state laws on the "subject" or "issue" addressed by the HCS. The precise question for this Court is whether the "issue" addressed by the HCS is broad enough to encompass warnings by industrial truck manufacturers and distributors. In light of the traditional presumption against preemption, rules of statutory interpretation, and the congressional intent in giving preemptive effect to regulations promulgated under the OSH Act, the answer to the question is "no."

### IV. Discussion

The HCS limits the issue addressed by the HCS both in the subsection describing the scope of the HCS and throughout the HCS. The HCS only imposes restraints on parties other than industrial truck manufacturers or distributors. The limited scope of the actual regulations, when considered in conjunction with (i) the strong presumption against finding federal preemption with regard to health and safety regulations, (ii) rules of regulatory interpretation, and (iii) the congressional purpose in providing the OSH Act with preemptive power, compels the conclusion that the HCS does not preempt a state requirement that industrial truck manufacturers or distributors provide hazard warnings on the industrial trucks.

### A. The Presumption Against Preemption of the States' Police Power Supports a Construction of the HCS Which Allows States to Regulate Industrial Truck Manufacturers and Distributors

Our federal system places the authority for regulating health and safety in the

hands of the States. Federal regulations can deprive the states of the states' traditional power to regulate health and safety *only* when Congress clearly establishes that the federal regulations preempt state law. The presumption operates in the present case to prevent a broad construction of the "issue" addressed by the HCS.

■ As explained by Justice Kennedy in his concurring opinion in *Gade:* "we begin 'with the assumption that the historic police powers of the States [are] not to be superseded ... unless that was the clear and manifest purpose of Congress.'" *Gade,* 505 U.S. at 111, 112 S.Ct. at 2390 (Kennedy, J., concurring) (quoting *Rice v. Santa Fe Elevator Corp.,* 331 U.S. 218, 230, 67 S.Ct. 1146, 1152, 91 L.Ed. 1447 (1947)); *see also Hillsborough County v. Automated Medical Lab., Inc.,* 471 U.S. 707, 715, 105 S.Ct. 2371, 2376, 85 L.Ed.2d 714 (1985). A court must look to "the structure and purpose of the [regulation] as a whole" to determine whether the regulation preempts state law. *Gade,* 505 U.S. at 98, 112 S.Ct. at 2383.

■ The statement of preemption in the preamble of the HCS must be read in light of the historic preference against finding preemption where the State's power to regulate health and safety is at issue. The statement that the HCS preempts all state and local laws "pertaining to the subject" of communicating hazards to employees is clear. There is no doubt that the HCS does preempt state and local laws. *See Nat'l Solid Wastes Management Ass'n v. Killian,* 918 F.2d 671, 676 (7th Cir.1990) (citing the HCS as an example of express preemption by OSHA regulations), *aff'd, Gade v. Nat'l Solid Wastes Management Ass'n,* 505 U.S. 88, 112 S.Ct. 2374, 120 L.Ed.2d 73 (1992); *Environmental Encapsulating Corp. v. New York City,* 855 F.2d 48, 54 (2d Cir.1988) (same). What is less clear is the *scope* of the "subject" or "issue" that the HCS preempts.

As already explained above, the preamble to the HCS describes a broad "issue" which is preempted: communication of hazards to employees. The "Scope and application" section, as well as the remaining text of the regulation, however, limit the scope of the issue only to communication to employees by employers and chemical handlers. The HCS leaves unregulated other groups who could provide separate warnings to employees, such as industrial truck manufacturers or distributors.

■ Where a group is left unregulated, it is not impossible for that group to comply with both federal and state law "because there is simply no federal standard for a private party to comply with" and the state regulation cannot "frustrate 'the accomplishment and execution of the full purposes and objectives of Congress.'" *Freightliner Corp. v. Myrick,* — U.S. —, —, 115 S.Ct. 1483, 1488, 131 L.Ed.2d 385 (1995) (concluding that a federal statute does not preempt state law where no federal standard exists with regard to ABS brakes) (quoting *Hines v. Davidowitz,* 312 U.S. 52, 67, 61 S.Ct. 399, 404, 85 L.Ed. 581 (1941)). In the absence of a federal requirement, the Court cannot assume that Congress meant to preempt state law with regard to the unregulated subject. The Court cannot infer preemption from silence.

The HCS is silent with regard to regulation of industrial truck manufacturers and distributors. The Court consequently cannot conclude that the HCS bars state regulation of industrial truck manufacturers and distributors.

In short, despite the broad sweep of the language in the preamble of the HCS, the HCS as a whole limits the issue addressed by the HCS because the HCS explicitly regulates only employers and chemical handlers. The HCS, when read in its entirety, falls short of demonstrating a "clear and manifest purpose" to deprive states of their right to regulate industrial truck manufacturers with regard to warning requirements. In light of the strong presumption against finding preemption of state law in the area of health and safety and the corollary that a court cannot infer preemption from the absence of regulation, the scope of the issue addressed by the HCS is properly limited to requiring employers and chemical handlers to participate in providing warnings to employees. Industrial truck manufacturers and distributors fall out-

side the scope of the HCS and consequently may be subject to state regulation.

## B. The Doctrine of *Ejusdem Generis* Supports a Narrow Construction of the Preemptive Effect of the HCS

■ The doctrine of *ejusdem generis* requires that specific statements control the general statements in a statute or regulation. *Ejusdem generis* lends added support to the conclusion that the HCS does not preempt state regulation of industrial truck manufacturers or distributors because neither group is included among those explicitly regulated by the HCS.

■ A well-established rule of statutory interpretation, *ejusdem generis*, provides that, where specific words follow general words, "the general words are construed to embrace only objects similar in nature to those objects enumerated by the [subsequent specific words]." 2A C. Sands, Sutherland on Statutory Construction § 47.17, p. 188 (5th ed. 1992); *see also, Breininger v. Sheet Metal Workers,* 493 U.S. 67, 91–92, 110 S.Ct. 424, 438–39, 107 L.Ed.2d 388 (1989) (applying the doctrine of *ejusdem generis* ).

In the present case, the preamble of the HCS provides that the HCS is intended to preempt any legal requirements of a state regarding the subject of "communicating information concerning hazards" to employees. 29 C.F.R. § 1910.1200(a)(2). The preamble also notes that the HCS is meant to address the subject "comprehensively." *Id.*

The section of the HCS immediately following the preamble, entitled "Scope and application," however, limits the reach of the HCS to cover only employers and chemical manufactures, importers, and distributors. 29 C.F.R. § 1910.1200(b). A reading of the entire HCS confirms that the HCS imposes regulation on the four groups identified in the "Scope and application" section.

Application of the doctrine of *ejusdem generis* to the HCS compels the conclusion that the preemptive power of the HCS extends only to state or local regulations which impose warning requirements on the four groups specifically identified in the HCS. Despite the broad the language of the preamble, the HCS, when considered in its entirety, reveals that the Court should not grant the HCS preemptive power beyond barring States from imposing hazard warning or evaluation requirements on chemical manufacturers, importers, and distributors, or employers. The foregoing careful, narrow construction of the HCS is further supported by the character of the preemption for the OSH Act intended by Congress.

## C. Congress' Purposes in Passing the OSH Act Support a Narrow Construction of the Issue Preempted by the HCS

■ Congress' reasons for providing preemptive effect to OSH Act regulations are not as broad as some other federal laws which provide for preemption, such as ERISA. The purpose for preemption by OSH Act standards is not to eliminate discrepancies between state standards, but, rather, to avoid the imposition of conflicting or duplicative standards on the regulated groups. A reading of the HCS with the congressional rationale for preemption in mind requires a construction of the HCS which preempts only those state laws which would subject particular groups to conflicting or duplicative standards.

■ The extent of preemption intended by Congress is the key factor in determining whether federal law preempts state law. As explained by the plurality in *Gade:* "The purpose of Congress is the ultimate touchstone." *Gade,* 505 U.S. at 96, 112 S.Ct. at 2382–82 (quoting *Allis–Chalmers Corp. v. Lueck,* 471 U.S. 202, 208, 105 S.Ct. 1904, 1909–10, 85 L.Ed.2d 206 (1985)). An examination of the congressional intent behind providing preemptive power for the OSH Act reveals that the preemptive effect of the HCS should not extend beyond the scope of covering those persons explicitly regulated by the HCS.

Some federal statutes provide for expansive preemption. ERISA, for instance, explicitly states that ERISA "supersede[s] any and all State laws insofar as they may now or hereafter relate to any employee benefit plan...." 29 U.S.C. § 1144(a). The ERISA

preemption clause is a " 'virtually unique preemption provision' whose language is 'conspicuous for its breadth' and [is] 'deliberately expansive.' " *Trustees of Elec. Workers Health & Welfare Trust v. Marjo Corp.*, 988 F.2d 865, 866 (9th Cir.1992) (citations omitted). ERISA preempts every state law that "relates" to employee benefit plans in an attempt to establish a uniform national standard that guarantees efficient operation of the federal regulatory scheme. *See* Henry L. Drummonds, *The Sister Sovereign States: Preemption and the Second Twentieth Century Revolution in the Law of the American Workplace*, 62 Fordham L.Rev. 469, 523–24 (1993).

■ The OSH Act, however, is not designed to accomplish the same broad preemptive goals as ERISA. The purpose of the OSH Act is to ensure minimum standards of workplace health and safety. *See* 29 U.S.C. § 651(b); *Gade*, 505 U.S. at 96, 112 S.Ct. at 2382; *Environmental Encapsulating Corp. v. New York City*, 855 F.2d 48, 59 (2d Cir.1988) (the Act's purpose is to "assure minimum—but not necessarily uniform—occupational health and safety standards"). A state may supplant the federal standards, but only if the state standards meet or exceed the federal standards. 29 U.S.C. § 667(b). The OSH Act therefore does not aim to establish a *uniform* system of workplace health and safety regulations. Rather, the Act is designed to guarantee minimal workplace standards and to ensure that "employers and employees [are subject] to only one set of regulations, be it federal or state." *Gade*, 505 U.S. at 99, 112 S.Ct. at 2383.

A reading of the HCS with the specific preemptive purpose of the OSH Act in mind supports a narrow construction of the "issue" addressed by the HCS. As explained above, the scope of the HCS does not extend beyond the requirements imposed upon employers and chemical handlers. An interpretation of the HCS that extends the preemptive effect of the HCS beyond the clear scope of the HCS would ignore the fact that Congress' primary concern in providing for preemption in the OSH Act was to ensure minimal standards and to avoid the imposition of duplicative regulations on workers and employers.

The plurality in *Gade* repeatedly emphasized that Congress provided the OSH Act with preemptive powers in order to avoid placing duplicative regulations on workers and employers. *See Gade*, at 99–100, 101–02, 112 S.Ct. at 2384, 2385. The *Gade* plurality briefly hinted, however, that Congress may have intended a broader preemptive power for the OSH Act. The *Gade* plurality noted that a subsection of the OSH Act provides that the Secretary of Labor shall approve a state plan if, in the Secretary's judgment, the plan does not include product standards which "unduly burden interstate commerce." *Gade*, at 100, 112 S.Ct. at 2384 (citing 29 U.S.C. § 667(c)(2)). According to the plurality:

> If a State could supplement federal regulations without undergoing the [state plan] approval process, then the protections that the [product standard provision] offers to interstate commerce would easily be undercut. It would make little sense to impose such a condition on state programs intended to supplant federal regulations and not those that merely supplement it: the burden on interstate commerce remains the same.

*Gade*, at 100–01, 112 S.Ct. at 2384.[2]

The language of the plurality, however, is not directly binding on this Court. First, the above-cited language qualifies as nothing more than dicta. The plurality based its conclusion that the OSH Act implicit wields

---

2. Justice Souter's dissent, joined by three other Justices, rejected the plurality's interpretation of the product standard clause:

> The [product standard] puts a limit on the Secretary's authority to approve a plan that burdens interstate commerce, thus capping the discretion that might otherwise have been read into the congressional delegation of authority to the Secretary to approve state plans. From this restriction applying only to the Secretary's federal authority it is clearly a *non-sequitur* to conclude that pre-emption must have been intended to avoid the equally objectionable undue burden that independent state regulation might otherwise impose. Quite the contrary; the dormant Commerce Clause can take care of that, without any need to assume pre-emption.

> *Gade*, at 120, 112 S.Ct. at 2394 (Souter, J., dissenting).

implicit preemptive power on the observation that "the OSH Act as a whole evidences Congress' intent to avoid subjecting workers and employers to duplicative regulation." *Gade,* at 100, 112 S.Ct. at 2384. The plurality based finding of preemption largely on the language of section 18(a) and (b) of the OSH Act. *Gade,* at 99–100, 112 S.Ct. at 2384. The plurality's observations regarding the product standard were not a necessary, let alone integral, element the plurality's conclusion.

Second, the state law regulations at issue in *Gade* imposed duplicative regulations on the same groups—employers and employees—that the federal standards already regulated. The facts of *Gade* therefore are distinguishable from the present case, where the industrial truck manufacturers are *not* regulated by the federal standard. Consequently, the Supreme Court was not afforded the opportunity in *Gade* to consider whether the OSH Act would preempt a state standard which imposed requirements on persons *other than* those already regulated by the federal standard. This Court, having been afforded the opportunity, concludes that a federal OSH Act standard cannot preempt a state law where the state law place obligations on persons not regulated by the federal standard.

In short, the primary purpose of the OSH Act is to ensure minimum standards for workplace health and safety and to prevent states from issuing regulations that may impose duplicative responsibilities on those groups already regulated by the federal standards. Courts should apply the preemptive effect of a statute based on the congressional purpose in enacting the statute. Reading the HCS in light of Congress' preemptive purpose in passing the OSH Act, this Court concludes that the HCS preempts state law only insofar as the state law attempts to impose warning requirements on employers or chemical handlers. The HCS does not preempt a state law that requires industrial truck manufacturers to provide warnings on their products because the state law does not impose requirements on the same persons already regulated by the federal standard.

### D. Summary

Three different considerations each support a narrow construction of the "issue" addressed by the HCS: (i) the presumption against finding preemption on issues involving regulation of health and safety, (ii) the rules of statutory interpretation, and (iii) Congress' purpose in granting preemptive power to OSH Act standards. Application of the doctrine of *ejusdem generis* reveals that the scope of the HCS is limited to the regulation of certain groups. The presumption against finding preemption of state law in areas regarding health and safety require the Court to strictly construe and to refuse to extend the preemptive scope of the HCS beyond those matters which are clearly regulated by the HCS. Finally, the congressional intent in passing the OSH Act requires this Court to rein in OSH Act standards short of allowing preemption of groups left unregulated by a federal standard.

In short, the preemptive effect of the HCS cannot extend beyond the scope of the HCS. Industrial truck manufacturers are not included within the scope of the HCS. State regulation of the industrial truck manufacturers therefore cannot be preempted by the HCS.

### V. Conclusion

The initial question before this Court is whether the "issue" addressed by the HCS is broad enough to encompass hazard warnings by industrial truck manufacturers. As explained above, the doctrine of *ejusdem generis* as well as the traditional presumption against finding preemption in matters involving health and safety and the congressional intent behind the OSH Act all require the conclusion that the "issue" addressed by the HCS is not so broad as to include hazard warnings by truck manufacturers. The HCS consequently cannot preempt Proposition 65 and the Proposition 65 implementing regulations insofar as Proposition 65 or its implementing regulations (Title 22) require industrial manufacturers to provide hazard warnings to operators of the trucks.

Based on the foregoing analysis, this Court must reject the Complaint's contention that the HCS preempts state law and state regu-

lations insofar as the state law or regulations require truck manufacturers to provide hazard warnings. Consequently, the State's motion to dismiss the Complaint is GRANTED and Plaintiffs' motion for summary judgment is DENIED.

IT IS SO ORDERED.