INDUSTRIAL TRUCK ASSOCIATION, INCORPORATED, a District of Columbia corporation; Mitsubishi Caterpillar Forklift America Inc., a Delaware corporation, Plaintiffs–Appellants,

v.

Carol HENRY, Dr., Director of the Office of Environmental Health Hazard Assessment; Daniel E. Lungren, Attorney General, for the State of California, Defendants–Appellees.

No. 95–56405.

United States Court of Appeals,
Ninth Circuit.

Argued and Submitted Dec. 11, 1996.

Decided Sept. 29, 1997.

**1306**

Gary E. Cross, Dunaway & Cross, Washington, DC, for plaintiffs-appellants.

Dennis A. Ragen, Deputy Attorney General, San Diego, California, for defendants-appellees.

Before: FARRIS, BEEZER and TASHIMA, Circuit Judges.

TASHIMA, Circuit Judge:

■ This case presents a narrow but complex question of preemption. California has promulgated occupational safety regulations as part of its implementation of Proposition 65, the Safe Drinking Water and Toxic Enforcement Act, Cal. Health & Safety Code, §§ 25249.5–25249.13 ("Proposition 65"). We must decide whether California may enforce these regulations against manufacturers of industrial trucks under the authority of that portion of the state regulations which the state did not incorporate into the state plan it submitted to the federal Occupational Health and Safety Administration ("OSHA"). We hold that the parts of the state regulations not submitted to OSHA, insofar as they apply to industrial trucks, are preempted under the Occupational Safety and Heath Act of 1970, 29 U.S.C. §§ 651–678, and by OSHA's Hazard Communication Standard, 29 C.F.R. § 1910.1200.

## I. BACKGROUND

### A. The Hazard Communication Standard and California's State Plan.

The Occupational Safety and Health Act authorizes the Secretary of Labor to promulgate federal occupational safety and health standards. 29 U.S.C. § 655.[1] Pursuant to this authority, OSHA promulgated the Hazard Communication Standard to protect workers from hazardous chemicals in the workplace. The Hazard Communication Standard applies to all sectors of the economy. It establishes rules for both the identification and evaluation of hazardous chemicals. 29 C.F.R. § 1910.1200(d). It also seeks to inform and educate employees about these chemicals by requiring employers to conduct employee training and to disseminate information in the workplace. *See* 29 C.F.R. § 1910.1200(b), (e)-(h).

Although the Occupational Safety and Health Act authorizes OSHA to promulgate uniform federal standards like the Hazard Communication Standard, it also permits

---

1. An "occupational safety and health standard" is a "standard which requires conditions, or the adoption or use of one or more practices, means, method, operations, or processes, reasonably necessary or appropriate to provide safe or healthful employment and places of employment." 29 U.S.C. § 652(8).

states to assume and maintain regulatory responsibility for areas in which OSHA has promulgated a federal standard. To do so, a state must submit to OSHA a "state plan" with proposed state standards. 29 U.S.C. § 667(b). If the state plan is approved by OSHA, the standards in the state plan displace applicable federal standards. *Id.* The Occupational Safety and Health Act and the regulations promulgated thereunder provide for implementation, oversight, and modification of these state plans. *See* 29 U.S.C. § 667(c)-(h); 29 C.F.R. §§ 1902, 1952.1–1952.11, 1953–1956. Currently, over 20 states and territories, including California, have approved plans. *See* 29 C.F.R. § 1952.

California's state plan (the "State Plan") was first approved by OSHA in 1973 and has since been amended and modified several times with OSHA's approval. *See* 29 C.F.R. § 1952.175. The State Plan is administered by the California Department of Industrial Relations, 29 C.F.R. § 1952.175(b); Cal. Lab. Code §§ 50.7, 6302(a), and it is required to make the State Plan consistent with state laws governing occupational safety and health. Cal. Lab.Code § 50.7. Occupational safety and health standards in the State Plan are promulgated by the California Occupational Safety and Health Standards Board (Cal–OSH Standards Board), an agency within the Department of Industrial Relations. *Id.* §§ 140, 142.3.

**B. Proposition 65.**

In 1986, California voters approved Proposition 65. It requires the State to publish and maintain a list of chemicals known to cause cancer, birth defects or other reproductive harm. Cal. Health & Safety Code § 25249.8. It also prohibits any person doing business in the State from intentionally exposing individuals to these chemicals without a clear and reasonable warning prior to exposure. *Id.* § 25249.6. Civil actions enforcing Proposition 65 may be initiated by the California Attorney General, district attorneys,

city attorneys, or by citizen suits. *Id.* § 25249.7.

California's Office of Environmental Health Hazard Assessment ("OEHHA") promulgated regulations that provide the specific warning methods required by Proposition 65. Cal.Code Regs., tit. 22, §§ 12000 *et. seq.* ("OEHHA Regs.").[2] An "occupational exposure," which is an exposure "in the workplace of the employer causing the exposure to any employee," requires either warning labels attached to products or warning signs in the workplace. *Id.* § 12601(c). A third acceptable form of warning is "a warning to the exposed employee about the chemical in question which fully complies with all information, training, and labeling requirements" of the federal Hazard Communication Standard or California's Hazard Communication Standard. *Id.* § 12601(c)(1)(C). The OEHHA Regs. went into effect in 1988 and 1989.

In 1990, several labor and environmental groups sought a writ of mandamus from the California Court of Appeal ordering the Cal–OSH Standards Board to incorporate the provisions of Proposition 65 into the State Plan and to submit the amended State Plan to OSHA for approval. *California Labor Fed'n v. California Occupational Safety and Health Standards Bd.,* 221 Cal.App.3d 1547, 271 Cal.Rptr. 310 (1990). At the time, the State Plan provided for "warnings in accordance with the HCS but [made] no reference to Proposition 65." *Id.* at 1558, 271 Cal.Rptr. at 317. The labor and environmental groups were concerned that if Proposition 65 were not incorporated into the State Plan, Proposition 65's provisions relating to occupational safety and health would be preempted by the Hazard Communication Standard. *Id.* at 1550, 1553–54, 271 Cal.Rptr. at 312, 314.[3]

The Court of Appeal granted the writ. *Id.* at 1556–59, 271 Cal.Rptr. at 316–18. It held that Proposition 65 governed occupational safety and health. The Court of

---

**2.** Warning requirements differ, depending on whether an exposure qualifies as a consumer product exposure, an occupational exposure, or an environmental exposure. Cal.Code Regs., tit. 22, § 12601. Our discussion of the OEHHA Regs. is limited to those regulations concerning occupational exposures. This case does not involve, and we do not address, OEHHA's regulations of the other two types of exposure.

**3.** In fact, chemical manufacturers had already filed suit in federal court seeking injunctive relief on these grounds. *Id.* at 1554–55, 271 Cal.Rptr. at 315.

Appeal further held that the State Plan's current incorporation of the Hazard Communication Standard did not make the inclusion of Proposition 65 superfluous because the two regulatory schemes were not identical. *Id.* at 1558, 271 Cal.Rptr. at 317. The court directed the Cal–OSH Standards Board to include Proposition 65's worker safety provisions in the State Plan. *Id.* at 1559, 271 Cal.Rptr. at 318.

To comply with the state court's order, the Cal–OSH Standards Board issued regulations seeking to incorporate Proposition 65 and the OEHHA Regs. into the State Plan. Cal.Code Regs., tit. 8, § 5194(b)(6) ("Title 8 Regs."). This addition to the State Plan, went into effect on December 17, 1991. On January 30, 1992, California submitted the Proposition 65 amendments to the State Plan to OSHA.[4] In September, 1996, OSHA requested public comment on whether it should approve California's modified State Plan. *Supplement to California State Plan; Request for Public Comment,* 61 Fed.Reg. 48,-443 (1996). Recently, OSHA approved the Proposition 65 modifications to the State Plan, subject to certain conditions. *Approval; California State Standard on Hazard Communication Incorporating Proposition 65,* 62 Fed.Reg. 31,159 (Jun. 20, 1997) ("*Approval Decision*"). Thus, California currently has on its books two sets of regulations dealing with Proposition 65 warnings: the Title 8 Regs. in the State Plan and the OEHHA Regs.

### C. District Court Proceedings.

Plaintiffs are Mitsubishi Caterpillar Forklift America Inc., a manufacturer and distributor of industrial trucks, and Industrial Truck Association, Incorporated, a trade association of industrial truck manufacturers. Industrial trucks, commonly known as forklifts, are designed solely for use in the workplace. They emit diesel fuel exhaust that contains components on the Proposition 65 hazard list. In this action, plaintiffs alleged that enforcement of the warning provisions of Proposition 65 and the OEHHA Regs. against industrial truck manufacturers was

preempted under the Occupational Safety and Health Act by the Hazard Communication Standard. They sought declaratory and injunctive relief against defendants the Attorney General of California and the Director of OEHHA (collectively the "State").

Plaintiffs contended that the Title 8 Regs. did not include all of the occupational provisions of the OEHHA Regs. As a result, according to plaintiffs, although manufacturers and distributors of forklifts are not subject to regulation under the State Plan, they may be subject to lawsuits or other enforcement proceedings under the OEHHA Regs. Plaintiffs argued specifically that the Title 8 Regs. in the State Plan expressly apply Proposition 65's warning requirements only to "employers" of California workers. *See* Cal.Code Regs., tit. 8, § 5194(b)(6)(A) (applying Proposition 65's warning provisions to "an employer which is a person in the course of doing business within the meaning of Health and Safety Code Section 25249.11(a) and (b)"); *see also id.* § 5194(b)(6)(B), (C) (referring to any "employee" subject to Proposition 65); *id.* § 5194(b)(1) (distinguishing between manufacturers and employers). Thus, plaintiffs asserted that the State Plan does not apply warning requirements to manufacturers or distributors of industrial trucks beyond imposing an obligation to warn their own employees.

By contrast, plaintiffs argued that the OEHHA warning requirements were not limited to employers, but applied to any "person in the course of doing business." Cal. Health & Safety Code § 25249.5.[5] It is those parts of Proposition 65 and the OEHHA Regs. not submitted to and approved by OSHA-not the State Plan itself-that plaintiffs alleged were preempted by the Hazard Communication Standard.

Plaintiffs moved for summary judgment against enforcement of these nonapproved provisions. The State, in turn, moved to dismiss plaintiffs' complaint under Fed. R.Civ.P. 12(b)(6). The State contended that plaintiffs' threshold argument about the rela-

---

4. As a result of these actions, the suit by the chemical manufacturers was dismissed by the federal district court as moot.

5. Plaintiffs concede that manufacturers and distributors of industrial trucks are "persons in the course of doing business."

tionship between the State Plan and the OE-HHA Regs. was wrong. According to the State, the Title 8 Regs. included all of the occupational warning requirements of Proposition 65 and the OEHHA Regs.[6] Therefore, California had submitted all of these provision to OSHA as part of its amendments to the State Plan and there is nothing left for the federal Hazard Communication Standard to preempt. Alternatively, the State argued that even if some of the warning requirements of Proposition 65 were omitted from the State Plan, they were not preempted by the Hazard Communication Standard.

The district court granted the State's motion to dismiss and denied plaintiffs' motion for summary judgment. *Industrial Truck Ass'n, Inc. v. Henry*, 909 F.Supp. 1368 (S.D.Cal.1995). It did not address whether Proposition 65 and the OEHHA Regs. had been fully incorporated into the State Plan. *Id.* Instead, it adopted the State's alternative argument, holding that, as applied to plaintiffs, the OEHHA Regs. are not preempted by the federal Hazard Communication Standard even if the regulations have not been included in the State Plan. *Id.* Plaintiffs timely appeal. We have jurisdiction under 29 U.S.C. § 1291. Once such statutory jurisdiction is present, the district court's final judgment also gives us "jurisdiction to review its denial of plaintiff's motion for summary judgment." *Jones–Hamilton Co. v. Beazer Materials & Serv., Inc.*, 973 F.2d 688, 694 (9th Cir.1992) (quoting *Abend v. MCA, Inc.*, 863 F.2d 1465, 1482 n. 20 (9th Cir.1988), *aff'd*, 495 U.S. 207, 110 S.Ct. 1750, 109 L.Ed.2d 184 (1990)).

## II. STANDARD OF REVIEW

■ We review de novo both the district court's dismissal for failure to state a claim and its denial of the motion for summary judgment. *Stone v. Travelers Corp.*, 58 F.3d 434, 436–37 (9th Cir.1995) (failure to state a claim); *King v. AC & R Advertising*, 65 F.3d 764, 767 (9th Cir.1995) (summary judgment). The construction of a statute is a question of law that we review de novo. *Hellon & Assoc. Inc. v. Phoenix Resort Corp.*, 958 F.2d 295, 297 (9th Cir.1992). Preemption is also a

matter of law subject to de novo review. *Inland Empire Chapter of Associated Gen. Contractors v. Dear*, 77 F.3d 296, 299 (9th Cir.1996); *Aloha Airlines, Inc. v. Ahue*, 12 F.3d 1498, 1500 (9th Cir.1993).

## III. PREEMPTION

■ There are three circumstances in which state law is preempted under the Supremacy Clause, U.S. Const. art. VI, cl. 2, by federal law: (1) express preemption, where Congress explicitly defines the extent to which its enactments preempt state law; (2) field preemption, where state law attempts to regulate conduct in a field that Congress intended the federal law exclusively to occupy; and (3) conflict preemption, where it is impossible to comply with both state and federal requirements, or where state law stands as an obstacle to the accomplishment and execution of the full purpose and objectives of Congress. *English v. General Elec. Co.*, 496 U.S. 72, 78–80, 110 S.Ct. 2270, 2274–75, 110 L.Ed.2d 65 (1990); *Southern Pac. Transp. Co. v. Public Util. Comm'n*, 9 F.3d 807 (9th Cir.1993).

■ Although these categories provide a useful analytic framework, they are not "rigidly distinct." *English*, 496 U.S. at 79 n. 5, 110 S. Ct. at 2275 n. 5. Field preemption, for instance, "may be understood as a species of conflict pre-emption: A state law that falls within a pre-empted field conflicts with Congress' intent (either express or plainly implied) to exclude state regulations." *Id.* It is, however, a more potent species, for under field preemption the state regulation is preempted whether or not it actually conflicts with the federal scheme. *See Rice v. Santa Fe Elevator Corp.*, 331 U.S. 218, 230–32, 67 S.Ct. 1146, 1152–53, 91 L.Ed. 1447 (1947); *Sayles Hydro Assoc. v. Maughan*, 985 F.2d 451, 455 (9th Cir.1993). Finally, in all cases, Congressional intent to preempt state law must be clear and manifest. *Law v. General Motors Corp.*, 114 F.3d 908, 909–10 (9th Cir.1997) (citations omitted).

---

**6.** The State argued, among other things, that the OEHHA Regs. were incorporated by reference in Appendix E of the Title 8 Regs. Thus, the State

Plan applies to "persons" as well. *See* Cal.Code Regs. tit. 8, § 5194(k)(3).

### A. Preemption under the Occupational Safety and Health Act.

The Supreme Court has held that the Occupational Safety and Health Act expresses Congress' clear and manifest intent to preempt state law. *Gade v. National Solid Wastes Management Ass'n,* 505 U.S. 88, 112 S.Ct. 2374, 120 L.Ed.2d 73 (1992). In *Gade,* the plurality interpreted § 18 of the Act, 29 U.S.C. § 667, and held that unless a state plan is submitted to OSHA, "the OSH Act pre-empts *all* state 'occupational safety and health standards relating to any occupational safety or health issue with respect to which a Federal standard has been promulgated.'" 505 U.S. at 102, 112 S.Ct. at 2384 (emphasis supplied) (quoting 29 U.S.C. § 667(b)). The scope of preemption in each area in which a federal standard has been promulgated is complete. All state regulations relating to the "issue" of a federal standard are preempted even if they do not conflict with the federal scheme. *Id.* at 103, 112 S.Ct. at 2385.

■ This holding, by its very nature, establishes that the preemption worked by federal OSHA standards goes beyond conflict preemption. The majority in *Gade* held that principles of field preemption apply against any state law relating to the "issue" or subject matter of a federal standard. *Id.* at 104 n. 2, 112 S.Ct. at 2385 (plurality) ("Although we have chosen to use the term 'conflict' pre-emption, we could as easily have stated that the promulgations of a federal safety and health standard 'pre-empts the field' for any nonapproved state law regulating the same safety and health issue.") (citing *English,* 496 U.S. at 79 n. 5, 110 S.Ct. at 2275 n. 5); *id.* at 113, 112 S.Ct. at 2390 (Kennedy, J., concurring) (rejecting the dissent's attempt to limit the scope of preemption to impossibility conflicts).

The State attempts to minimize the preemptive effect of OSHA standards by referring to *Gade* as a "splintered" decision. The Court's holding makes clear, however, that federal standards preempt even non-conflicting state laws. Although it is true that *Gade* was a plurality decision, in concurring, Justice Kennedy explicitly agreed with the "persuasive" holding of the four-Justice plurality that "in the OSH statute Congress intended to pre-empt supplementary state regulation of an occupational safety and health issue with respect to which a federal standard exists." *Id.* Thus, a majority of the Court rejected the notion of "concurrent" state and federal jurisdiction "in areas where [OSHA] issues a standard." *Id.* at 113–14, 112 S.Ct. at 2390–91.

The district court perceived the scope of preemption under *Gade* too narrowly. It held that the Occupational Safety and Health Act preempts only state regulations that impose requirements on employers and workers. *Industrial Truck,* 909 F.Supp. at 1376. It dismissed as dicta the Court's analysis of 29 U.S.C § 667(c)(2). *Id.* Section 667(c)(2) says nothing about employers and employees. It does, however, require OSHA to determine, prior to giving its approval of a state plan, whether: (1) the state standards in the plan are at least as effective as federal standards, and (2) the state standards, as applied to products, both do not unduly burden interstate commerce and are required by compelling local conditions. 29 U.S.C. § 667(c)(2). According to the plurality opinion, § 667(c)(2) demonstrates that *any* state regulations not submitted to OSHA as part of a state plan run afoul of the Occupational Safety and Health Act because OSHA has no opportunity to review them for fitness under this provision. *Gade,* 505 U.S. at 100–01, 112 S.Ct. at 2383–84.

We conclude that the plurality's analysis of § 667(c)(2) was not dicta, but rather an integral part of its decision. We agree that the best evidence of the existence of preemption comes from the text of 29 U.S.C. § 667(b). *See Gade* at 99, 112 S.Ct. at 2384; *id.* at 111, 112 S.Ct. at 2389 (Kennedy, J., concurring). As the plurality stated, its holding regarding the scope of Occupational Safety and Health Act preemption was dictated by its analysis of the statute "as a whole," *id.* at 99, 102, 112 S.Ct. at 2383, 2384 and that analysis clearly included § 667(c)(2). *Id.* at 100–01, 112 S.Ct. at 2383–84. The district court essentially adopted the position of the *Gade* dissent, *see Industrial Truck,* 909 F.Supp. at 1376 n. 2 (citing dissent), and erred in doing so.

■ Although *Gade* involved regulations from Illinois, a state that had not submitted a state plan to OSHA, *Gade,* 505 U.S. at 93–95,

112 S.Ct. at 2380–81 the plurality's preemption analysis extends to states with approved plans like California. *Gade* refers to preemption of state regulation on an issue-by-issue basis. *Id.* at 100, 103–05, 112 S.Ct. at 2383, 2385–86. Indeed, the key preemption provision of the Occupational Safety and Health Act makes clear that when a state submits a state plan on a health and safety issue, the state takes responsibility only for the "Federal standard" on that issue, not all federal standards. *See* 29 U.S.C. § 667(b). Thus, by including *some* occupational safety issues in a state plan, a state is not freed from the preemptive grasp of federal standards for occupational safety issues not within the plan.

■ Further, a state may not submit some regulations on a worker safety issue to OSHA as part of its state plan and omit other regulations relating to the same issue from the plan. The omitted regulations, even if complementary to the Occupational Safety and Health Act's scheme, are subject to the "background pre-emption" of the federal standard. *Gade*, 505 U.S. at 100, 112 S.Ct. at 2383. As the plurality explained:

> The OSH Act does not foreclose a State from enacting its own laws to advance the goal of worker safety, but it does restrict the ways in which it can do so. If a State wishes to regulate an issue of worker safety for which a federal standard is in effect, its only option is to obtain the prior approval of the Secretary of Labor, as described in [29 U.S.C. § 667].

*Id.* at 103–04, 112 S.Ct. at 2385–86 (footnote omitted). It would make the state plan approval requirement superfluous if a state could pick and choose which occupational health and safety regulations to submit to OSHA. Thus, under the Occupational Safety and Health Act, as interpreted by *Gade*, when OSHA promulgates a federal standard, that standard totally occupies the field within the "issue" of that regulation and preempts all state occupational safety and health laws relating to that issue, conflicting or not, unless they are included in the state plan.

### B. Preemption under the Hazard Communication Standard.

Under the *Gade* framework, we conclude that any portions of Proposition 65 and the OEHHA Regs. not included as part of the State Plan relate to the "issue" of the federal Hazard Communication Standard, and are therefore preempted. Our conclusion is based on OSHA's definition of the term "issue" within the Hazard Communication Standard and the preemptive reach of the phrase "relating to" under the Occupational Safety and Health Act and the Hazard Communication Standard.

### 1. The "issue" of the Hazard Communication Standard.

■ An agency's interpretation of the preemptive effect of its regulations is entitled to deference where Congress has delegated authority to the agency, the agency's interpretation is not contrary to a statute, and agency expertise is important to determining preemption. *See Medtronic, Inc. v. Lohr,* ⎯ U.S. ⎯, ⎯⎯–⎯⎯, 116 S.Ct. 2240, 2255–56, 135 L.Ed.2d 700 (1996); *Hillsborough County v. Automated Med. Labs.,* 471 U.S. 707, 714–15, 105 S.Ct. 2371, 2375–76, 85 L.Ed.2d 714 (1985) (citing *Chevron U.S.A. Inc. v. Natural Resources Defense Council, Inc.,* 467 U.S. 837, 842–45, 104 S.Ct. 2778, 2781–82, 81 L.Ed.2d 694 (1984)); *Brannan v. United Student Aid Funds, Inc.,* 94 F.3d 1260, 1263–66 (9th Cir.1996), *cert. denied,* ⎯ U.S. ⎯, 117 S.Ct. 2484, 138 L.Ed.2d 992, ⎯ U.S. ⎯, 117 S.Ct. 2496, 138 L.Ed.2d 1003 (1997). Here, it is appropriate to defer to OSHA's interpretation of the "issue" of the Hazard Communication Standard. The term "issue" is not defined by the Occupational Safety and Health Act. Congress explicitly gave the Secretary of Labor the power to promulgate standards, like the Hazard Communication Standard, that would have preemptive effect, 29 U.S.C. §§ 651 & 667(b), and agency expertise is important in determining which state warning requirements fall within the Hazard Communication Standard's regulatory field. *See Ohio Mfrs. Ass'n. v. City of Akron,* 801 F.2d 824, 833 (6th Cir.1986) (courts should defer to OSHA's determination of the preemptive effect of the Hazard Communication Standard). In order to determine OSHA's intended definition of "issue" we may look to "regulations, preambles, interpretive statements, and responses

to comments." *Hillsborough County,* 471 U.S. at 718, 105 S.Ct. at 2377.

OSHA defines the "issue" of the Hazard Communication Standard in a subsection of the "Purpose" section of the Hazard Communication Standard.[7] The first sentence of that definition provides:

> This occupational safety and health standard is intended to address comprehensively *the issue* of evaluating the potential hazards of chemicals, and communicating information concerning hazards and appropriate protective measures to employees, and to preempt any legal requirements of a state, or political subdivision of a state, pertaining to this subject.

29 C.F.R § 1910.1200(a)(2) (emphasis added). This broad language demonstrates that the occupational safety requirements of Proposition 65 and the OEHHA Regs. operate squarely within the "issue" of the Hazard Communication Standard. Proposition 65 and the OEHHA Regs. are state laws that require both "evaluating the potential hazards of chemicals" and "communicating information concerning hazards."

Notably, this definition of "issue" contains no limitation on whom a state may require to communicate information or to eliminate chemicals. "*Any* legal requirement" of a state regarding the evaluation of hazards and the communication of those hazards to employees is preempted. The second sentence emphasizes this point. It focuses on, and expansively lists, the various methods of evaluating, and communicating about, chemical hazards.

> Evaluating the potential hazards of chemicals, and communicating information concerning hazards and appropriate protective measures to employees, may include, for example, but is not limited to, provisions for: developing and maintaining a written hazard communication program for the workplace, including lists of hazardous chemicals present; labeling of containers of chemicals in the workplace, as well as of containers of chemicals being shipped to other workplaces; preparation and distribution of material safety data sheets to employees and downstream employers; and development and implementation of employee training programs regarding hazards of chemicals and protective measures.

*Id.*

OSHA's commentary in the 1987 preamble to the Hazard Communication Standard further demonstrates its intent to define the "issue" of the Hazard Communication Standard by prohibiting certain methods of regulation without regard to the entities employing these methods:

> The revised § 1910.1200(a)(2) not only defines hazard communication as an "issue" under the terms of the Act, but also enumerates the generic areas addressed by the standard for purposes of establishing the parameters of preemption. Thus any State or local government provisions requiring the preparation of material safety data sheets, labeling of chemicals and identification of their hazards, development of written hazard communication programs including lists of hazardous chemicals present in the workplace, and development and implementation of worker chemical hazard training for the primary purpose of assuring worker safety and health, would be preempted by the HCS unless it was established under the authority of an OSHA-approved State plan.

*Hazard Communications,* 52 Fed.Reg. 31,-852, 31,861 (1987) ("*1987 Final Rule* ").

The second sentence of § 1910.1200(a)(2) and the quoted passage from the 1987 preamble also support the conclusion that the OEHHA Regs. operate within the "issue" of the Hazard Communication Standard. These statements by OSHA explicitly indicate that labeling and the distribution of data sheets about hazardous chemicals in the workplace are within the Hazard Communication Standard's "issue." These same warning methods, the State informs us, are the ones that can be used to impose the warning

---

7. The district court referred to this section of the Hazard Communication Standard as its "preamble." *See, e.g., Industrial Truck,* 909 F.Supp. at 1371. We emphasize that the "Purpose" section is a substantive part of the Hazard Communication Standard. The term "preamble" refers to agency commentary published in the Federal Register along with a proposed or final rule. *See Hazard Communication,* 59 Fed.Reg. 6,126, 6,127 (1994).

requirements of the OEHHA Regs. on industrial truck manufacturers.

The State attempts, in a number of ways, to undermine the unmistakable clarity with which the Hazard Communication Standard's "issue" covers the nonapproved portions of the OEHHA Regs. Central to its arguments is its correct assertion that the Hazard Communication Standard's "Scope and application" section, 29 C.F.R. § 1920.1200(b), which follows the "Purpose" section, demonstrates that the Hazard Communication Standard does not impose warning requirements on industrial truck manufacturers and distributors.[8] Because the Hazard Communication Standard imposes no regulatory burden on plaintiffs, the State contends that the Hazard Communication Standard cannot preempt the state regulations that *do* apply to plaintiffs. It argues that Hazard Communication Standard preemption extends only to entities that the Hazard Communication Standard actually regulates.

This argument is unavailing. As we have pointed out, OSHA defines the "issue" of the Hazard Communication Standard not on the basis of who bears the regulatory burden, but on the type of regulation involved. Under the Occupational Safety and Health Act, that decision was OSHA's to make, and it resulted in OSHA's total occupation of the field of that issue. When a federal scheme exclusively occupies a field, the federal scheme proscribes all state action in that field. *See e.g., Napier v. Atlantic Coast Line R.R.,* 272 U.S. 605, 613, 47 S.Ct. 207, 210, 71 L.Ed. 432 (1926) (where Congress has occupied the field of locomotive safety, allegedly nonconflicting state laws regarding automatic fire doors and cab curtains preempted even though no federal regulation on point). Instead, "the test of pre-emption is whether 'the matter on which the State asserts a right to act is *in any way* regulated by the Feder-

al Act.'" *Pacific Gas & Elec. Co. v. State Energy Resources Conservation and Dev. Comm'n,* 461 U.S. 190, 212–13, 103 S.Ct. 1713, 1726–27, 75 L.Ed.2d 752 (1983) (quoting *Rice,* 331 U.S. at 236, 67 S.Ct. at 1154) (emphasis added); *Hawaii Newspaper Agency v. Bronster,* 103 F.3d 742, 749 (9th Cir. 1996). Here, the state seeks to impose hazardous chemical warning requirements using methods directly and comprehensively addressed by the Hazard Communication Standard. Thus, the state regulations are preempted.

The State protests that its regulations do not conflict with the Hazard Communication Standard and actually furthers Congress' goal of conveying accurate warnings to employees. But that is exactly the kind of argument that was advanced, and explicitly rejected, in *Gade.* All supplementary regulations are preempted, whether they conflict or not. If the State truly believes that the OEHHA Regs. are at least as effective as the Hazard Communication Standard, it has a simple remedy—to submit the regulations to OSHA as part of the State Plan. OSHA can then determine whether the State's claims are accurate.

Finally, the state attempts to narrow the definition of the "issue" expressed by OSHA in 29 C.F.R. § 1910.1200(a)(2). It argues that the broad definition of "issue" stated there is limited by the language in the "Scope and application" section. It buttresses its argument with the doctrine of *ejusdem generis,* which provides that specific words govern general words similar in nature to the preceeding general words. *See Morales v. Trans World Airlines, Inc.,* 504 U.S. 374, 384–85, 112 S.Ct. 2031, 2036–37, 119 L.Ed.2d 157 (1992) (general savings clause governed by specific provision listing preempted areas); *see generally,* 2A C.Sands, *Sutherland*

---

8. As stated above, besides employers, the Hazard Communication Standard's warning requirements are directed at manufacturers, importers and distributors of chemical "containers." *See* 29 C.F.R. § 1910.1200(b)(1). The parties agree that the only category, under which industrial truck manufacturers could be regulated is as a "distributor." However, distributors are regulated only as they distribute chemical "containers", *id.* § 1910.1200(f)(1), and vehicle engines, like the diesel engines in plaintiff Mitsubishi's indus-

trial trucks, are expressly excluded from the Hazard Communication Standard's definition of "container." *Id.* § 1910.1200(c). Thus, under the Hazard Communication Standard, no labels or material safety data sheets about dangerous emissions are required on plaintiff Mitsubishi's vehicles. *See also Approval Decision,* 62 Fed. Reg. at 31,176–77 (non-chemical manufacturers, including industrial truck manufacturers, not included within federal Hazard Communication Standard).

on *Statutory Construction* § 47.17, p. 188–89 (5th ed. 1992) ("*Sutherland* ") (*ejusdem generis* avoids general words rendering specific words superfluous). The flaw in the State's reasoning is that, unlike in *Morales,* only the "general" provision in the Hazard Communication Standard addresses preemption.

As we have shown above, "*s[ection] 1910.1200(a)(2)* not only defines hazard communication as an 'issue' . . . but also enumerates the generic areas addressed by the standard for purposes of establishing the parameters of preemption." *1987 Final Rule,* 52 Fed.Reg. at 31,861 (emphasis added). In no part of the Hazard Communication Standard, nor in any of OSHA's explanatory comments, including those to the "Scope and application" section, however, does OSHA suggest that any other sections of the Hazard Communication Standard besides § 1910.1200(a)(2) have any bearing on preemption or the definition of "issue." Indeed, the word "preemption" does not appear in any other section of the Hazard Communication Standard, and the word "issue" appears elsewhere only as a verb. As plaintiffs properly put it, "the Scope and application section does not pretend to delineate which state laws are preempted." Thus, the State's reliance on this canon of construction is misplaced. *Sacramento Reg'l County Sanitation Dist. v. Reilly,* 905 F.2d 1262, 1269 (9th Cir.1990) (*ejusdem generis* does not apply where specific and general terms not "akin") (citation omitted); *Sutherland,* § 47.17, p. 189 (same, where no inconsistency between specific and general factors).

### 2. The "relating to" language.

The third, and last, sentence of the "Purpose" section places the previously defined "issue" within the context of the OSH Act's preemptive reach:

Under section 18 of the Act, no state [or locality] may adopt or enforce, through any court or agency, any requirement *relating to* the issue addressed by this Federal standard, except pursuant to a Federally-approved state plan.

9. Our preemption analysis is not affected by OSHA's recent approval of the Proposition 65 amendments to the State Plan. *Approval Decision,* 62 Fed.Reg. at 31,159–81. OSHA, in its

29 C.F.R. § 1910.1200(a)(2) (emphasis added). This sentence emphasizes what is clear from the text of the Occupational Safety and Health Act. Federal standards, like the Hazard Communication Standard, preempt more than those state standards directly covering the same "issue" as the federal standard; rather, they preempt the broader category of state laws "relating to" the federal issue. 29 U.S.C. § 667(b); *Gade,* 505 U.S. at 105, 112 S.Ct. at 2386. Thus, even if the OEHHA Regs. did not fall directly within the issue of the Hazard Communication Standard, they would still be preempted if they "relat[e] to" that issue.

There are ample reasons to conclude that the Hazard Communication Standard and the OEHHA Regs. relate to the same issue or subject matter. First, it is undisputed that the occupational warning requirements of Proposition 65 and the OEHHA Regs. are, like the Hazard Communication Standard, occupational safety and health standards within the meaning of the Occupational Safety and Health Act. *See* 29 U.S.C. § 652(8); *California Labor Fed'n,* 221 Cal.App.3d at 1556–57, 271 Cal.Rptr. at 316–17. Further, as noted in part I.B, the OEHHA Regs. expressly provide that adherence to the warning requirements of the HCS satisfies its warning requirements. Cal.Code Regs., tit. 22, § 12601(c)(1)(C). We think it manifest that two sets of regulations relate to the same issue when they both directly govern occupational safety and health, and compliance with the substantive requirements of one expressly satisfies the substantive requirements of the other.[9]

### IV. CONCLUSION

We hold that, as applied to manufacturers and distributors of industrial trucks, the Proposition 65 occupational warning requirements at issue are preempted by the Occupational Safety and Health Act and the Hazard Communication Standard, except to the extent those requirements are contained in California's State Plan. The district court's order

*Approval Decision,* understandably, did not have occasion directly to address the question of state warning requirements not contained in the State Plan.

granting the State's motion to dismiss and denying plaintiffs' motion for summary judgment, 909 F.Supp. at 1378, is reversed. We emphasize that our decision is a narrow one. We have addressed an as-applied challenge to only that part of Proposition 65 that was not included in the State Plan.

Our preemption holding moots the State's remaining arguments. We therefore remand to the district court with directions to grant plaintiffs' motion for summary judgment.

**REVERSED and REMANDED.**