[No. A048574. First Dist., Div. Two. July 12, 1990.]

CALIFORNIA LABOR FEDERATION, AFL-CIO et al., Petitioners,
v.
CALIFORNIA OCCUPATIONAL SAFETY AND HEALTH
STANDARDS BOARD, Respondent.

1548

COUNSEL

Altshuler & Berzon, Stephen P. Berzon, Michael Rubin, Charles P. Scully II, Donald C. Carroll, Ralph Santiago Abascal, Albert H. Meyerhoff, David B. Roe and Laurence Gold for Petitioners.

Kroncik, Moskovitz, Tiedemann & Girard, Charles A. Barrett, Janet K. Goldsmith, William E. Hvidsten and Stephen H. Goldberg for Respondent.

OPINION

SMITH, J.—

## I. *Introduction*

In this case we consider whether respondent California Occupational Safety and Health Standards Board (the Board) has a duty under Proposition 97 (the State Occupational Safety and Health Plan Initiative) to include the warning and enforcement provisions of Proposition 65 (the Safe Drinking Water and Toxic Enforcement Act of 1986) in the state plan for occupational safety and health (the state plan). We conclude that the Board does have such a duty.

Petitioners[1] ask this court to invoke its original jurisdiction and issue a writ of mandamus ordering the Board to include in the state plan the warning and enforcement provisions of Proposition 65. (Health & Saf. Code, § 25249.5 et seq.)[2] They contend that the Board has a ministerial duty to include Proposition 65 in the state plan under Proposition 97 which, inter alia, amended Labor Code section 50.7, subdivision (a), to, in petitioners' view, require the Board to avoid federal preemption of state laws governing occupational safety and health by ensuring that the state plan is consistent with all such laws. Petitioners urge that if Proposition 65 is not included in the state plan, it may be preempted and rendered unenforceable in part by provisions of the federal Occupational Safety and Health Act. (29 U.S.C. § 651 et seq.) They filed a petition for rulemaking with the Board, seeking

---

[1] Petitioners are the California Labor Federation, AFL-CIO; John F. Henning, secretary-treasurer of that federation; American Federation of Labor and Congress of Industrial Organizations; Natural Resources Defense Council; Sierra Club; Environmental Defense Fund; Campaign California; Silicon Valley Toxics Coalition; and Bernardo Huerta.

[2] All further statutory references are to the Health and Safety Code unless otherwise indicated.

such incorporation, which was denied on July 27, 1989. Petitioners contend here that this court should exercise its original jurisiction because this case raises important issues of statewide significance and does not involve the need for a factual hearing before a trial court.

## II. *The Statutory Framework*

### A. *Proposition 65*

On November 4, 1986, the voters approved Proposition 65, which provides in pertinent part: "No person in the course of doing business shall knowingly and intentionally expose any individual to a chemical known to the state to cause cancer or reproductive toxicity without first giving clear and reasonable warning to such individual, except as provided in Section 25249.10."[3] (§ 25249.6.) " 'Person in the course of doing business' " is defined to exclude an employer having fewer than 10 employees and public employers. (§ 25249.11, subd. (b).) Pursuant to section 25249.12, the Governor has designated the California Health and Welfare Agency (the Agency) as the lead agency to implement the provisions of Proposition 65. The Agency has promulgated regulations governing warnings under Proposition 65. (Cal. Code Regs., tit. 22, § 12601.)

### B. *Fed/OSHA*

In 1970, Congress enacted the Occupational Safety and Health Act (Fed/OSHA), which provides for the adoption of minimum national health and safety standards. (29 U.S.C. § 651 et seq.) Fed/OSHA provides, however, that any state which desires to assume responsibility for development and enforcement of occupational safety and health standards with respect to which a federal standard has been promulgated may do so under certain conditions. Two prerequisites to such regulation are that the state law be "at least as effective" as the federal standard covering the same subject matter and that the state law be incorporated in a state plan submitted to and approved by the federal Secretary of Labor (the Secretary). (29 U.S.C. §§ 667(b), 667(c).) The Secretary is not required to approve such a plan

---

[3] Section 25249.10 exempts from the warning requirement (a) an exposure for which federal law governs warning in a manner preempting state law, (b) an exposure taking place less than twelve months subsequent to the listing of a chemical on a list required to be published by the Governor, and (c) an exposure for which the person responsible can show that the exposure poses no significant risk assuming lifetime exposure at the level in question for substances known to the state to cause cancer, and that the exposure will have no observable effect assuming exposure at 1,000 times the level in question for substances known to the state to cause reproductive toxicity.

unless in her judgment "standards, when applicable to products which are distributed or used in interstate commerce, are required by compelling local conditions and do not unduly burden interstate commerce." (29 U.S.C. § 667(c)(2).) The parties here agree that unless a state occupational safety and health law is incorporated in an approved state plan, it will be preempted to the extent it covers subject matter as to which there is a federal standard. (See 29 U.S.C. §§ 667(a), 667(b), 667(c); *United Airlines, Inc.* v. *Occupational Safety & Health Appeals Bd.* (1982) 32 Cal.3d 762, 772 [187 Cal.Rptr. 387, 654 P.2d 157].)

## C. *Cal/OSHA and Proposition 97*

In 1973, the Legislature enacted the California Occupational Safety and Health Act (Cal/OSHA). (Lab. Code, § 6300 et seq.) Section 107 of Cal/OSHA states in pertinent part: "The purpose of this act is to allow the State of California to assume responsibility for development and enforcement of occupational safety and health standards under a state plan pursuant to Section 18 [29 United States Code section 667] of the Federal Occupational Safety and Health Act of 1970 (Public Law 91-596) which was enacted December 29, 1970." (Stats. 1973, ch. 993, § 107, pp. 1954-1955.) "It was in response to [29 United States Code] section 667 that the California Legislature enacted the California Occupational Safety and Health Act of 1973. ([Lab. Code,] § 6300 et seq.)" (*United Airlines, Inc.* v. *Occupational Safety & Health Appeals Bd., supra*, 32 Cal.3d 762, 772.) The Department of Industrial Relations (DIR) is the state agency charged with administering the state plan. (Lab. Code, §§ 50.7, subd. (a); 6302.)

In February 1987, the Governor advised the Secretary of his intent to withdraw the state plan and to return exclusive control over the administration and enforcement of occupational safety and health law in California in the private sector to the federal government. Thereafter, the Governor reduced the amount of funds appropriated to DIR in the 1987 budget bill by $7 million for the announced purpose of terminating California's enforcement of its private sector responsibilities under Cal/OSHA. In October 1987, the Court of Appeal for the Third Appellate District held the Governor's action to be ineffective as an improper exercise of his item veto power. (*Ixta* v. *Rinaldi* (Oct. 26, 1987) C002805.) On January 21, 1988, the California Supreme Court granted a petition for review in that case. Following the approval of Proposition 97, the Supreme Court dismissed the cause as moot on March 23, 1989.

On November 8, 1988, the voters approved Proposition 97. This measure amended Labor Code section 50.7, subdivision (a), to read as follows: "The

Department of Industrial Relations is the state agency designated to be responsible for administering the state plan for the development and enforcement of occupational safety and health standards relating to issues covered by corresponding standards promulgated under the federal Occupational Safety and Health Act of 1970 (Public Law 91-596.) *The state plan shall be consistent with the provisions of state law governing occupational safety and health, including, but not limited to,* Chapter 6 (commencing with Section 140) and Chapter 6.5 (commencing with Section 148) of Division 1, and Division 5 (commencing with Section 6300), of this code [the provisions added by Cal/OSHA]." (Italics added.) The preamble to Proposition 97 states in pertinent part: "It is the purpose of this Act to restore California control over private sector safety and health, which the state has provided for since 1913, and has administered since 1973 through Cal/OSHA. Pursuant to Article XIV, Section 4, of the California Constitution,[4] state jurisdiction over worker safety and health should not be limited, eliminated or otherwise restricted, unless absolutely required by the Federal Constitution." (Prop. 97, § 1, subd. (10).)

### D. *The Role of the Board*

The Board is in DIR and consists of seven members appointed by the Governor. (Lab. Code, § 140.) Pursuant to Labor Code section 142.3, subdivision (a), the "board shall be the only agency in the state authorized to adopt occupational safety and health standards" and it "shall adopt standards at least as effective as the federal standards for all issues for which federal standards have been promulgated . . . within six months of the effective date of the federal standards and which, when applicable to products which are distributed or used in interstate commerce, are required by compelling local conditions and do not unduly burden interstate commerce."

### III. *The Possibility of Federal Preemption*

The possibility of federal preemption arises because in August 1987 the Hazard Communication Standard (HCS) under Fed/OSHA was amended to require employers to warn employees of potential exposure to certain hazardous materials in the work place. (29 C.F.R. § 1910.1200.) Since the HCS covers the general subject area of employee warnings for exposure to hazardous substances, Proposition 65 might be deemed preempted under 29 United States Code section 667 unless it is included as a part of the state

---

[4]This section, inter alia, vests the Legislature with plenary power to create and enforce a complete system of workers' compensation, including "adequate provisions for the comfort, health and safety and general welfare of any and all workers . . . . ."

plan. (Cf. *United Steelworkers of America* v. *Auchter* (3d Cir. 1985) 763 F.2d 728, 733-734.)

IV. *The Petition to the Board*

On February 7, 1989, petitioners herein filed a petition for rulemaking with the Board. They requested that the Board "amend its existing regulations, or adopt such other regulations, and otherwise take all such action as is necessary to assure that the California State Plan for Occupational Safety and Health ('state OSHA plan') includes and is consistent with the 'clear and reasonable warning' requirement, and other pertinent provisions, of Proposition 65 . . . ." Written and oral testimony was accepted by the Board and on July 27, 1989, the Board denied the petition, ruling that Proposition 65 is not a " 'state law governing occupational safety and health' " within the meaning of the Labor Code, and that even if it were it is not inconsistent with the state plan. The Board also found that incorporation of Proposition 65 in the state plan might create undue burdens on interstate commerce, prohibited by Fed/OSHA and Labor Code section 142.3, subdivision (a).

V. *The Federal Court Action*

On December 16, 1988, a complaint for declaratory and injunctive relief was filed by the Chemical Manufacturers Association and Chemical Industry Council of California against the Agency, Clifford L. Allenby as California Secretary of Health and Welfare, and John Van de Kamp as California Attorney General in the United States District Court for the Eastern District of California. (No. C-88-1615 LKK-JFM (hereafter the CMA action).) Pursuant to Evidence Code sections 452, subdivision (d), and 459, subdivision (a), we take judicial notice of the pleadings and memoranda filed in that action. The plaintiffs there seek a ruling that Proposition 65 is preempted by 29 United States Code section 667 in the workplace because the HCS and Proposition 65 relate to the same occupational safety and health issue— evaluation of and communication about chemicals in the workplace—and California has never submitted a state plan incorporating the provisions of Proposition 65 to the Secretary of Labor for approval. The plaintiffs in the CMA action moved for summary judgment, and we are informed by counsel herein that the motion is still pending. Neither the Agency nor Allenby has advanced any opposition on the merits to the plaintiffs' claim of federal preemption in that case.[5] The Attorney General alone contends in that action that the state plan was "automatically" amended to include

---

[5] They apparently do contest the standing of the plaintiffs to maintain the action.

Proposition 65 even though the Board specifically refused to incorporate its provisions.

The federal court has deferred ruling on the issues before it and has ordered the federal action stayed pending the outcome of this proceeding. Therefore, although we would not normally entertain a writ proceeding arising from litigation before a coordinant branch of the judiciary, there are no obstacles here arising from principles of comity which would counsel against our exercising jurisdiction—and indeed the federal court has apparently concluded interests of judicial economy would be served by our so doing, in this particular procedural context.

## VI. *Exercise of This Court's Original Jurisdiction*

This court has the power to entertain this petition, although no relief has been sought in the trial court, under article VI, section 10 of the California Constitution[6] and rule 56(a) of the California Rules of Court.[7] Petitioners urge us to exercise our discretion to do so in order to avoid undue delay because the pendency of the CMA action creates great uncertainty regarding the applicability of Proposition 65 to approximately 11 million California workers; only questions of law, as opposed to questions of fact, are involved here; and a ruling that the Board must incorporate the provisions of Proposition 65 into the state plan would probably defeat the claim of preemption. ■ Where issues presented are of great public importance and should be resolved promptly, original appellate jurisdiction may appropriately be exercised in a mandamus proceeding. (*County of Sacramento* v. *Hickman* (1967) 66 Cal.2d 841, 845 [59 Cal.Rptr. 609, 428 P.2d 593].)

We issued an order to show cause and placed this matter on calendar. We now conclude that an issue of statewide importance, which should be resolved promptly, is presented here. We also conclude, as discussed *post*, at page 1558, footnote 10, that no determination of disputed factual matters is necessary to resolution of this petition. Consequently, we do exercise our discretion to entertain the petition in the first instance.

---

[6] This section provides in pertinent part that Courts of Appeal "have original jurisdiction in proceedings for extraordinary relief in the nature of mandamus . . . ."

[7] This rule provides in pertinent part that when a petition for mandamus might have been made to a lower court in the first instance, a petition to a reviewing court shall set forth the circumstances which render it proper that the writ should issue originally from the reviewing court.

## VII. *Discussion*

A. *Proposition .65 Is a State Law Governing Occupational Safety and Health.*

Proposition 97 requires that the state plan be consistent with state laws governing occupational safety and health "including but not limited to" Cal/OSHA. (Lab. Code, § 50.7, subd. (a)). Thus, petitioners' argument that Proposition 65 must be incorporated into the state plan is dependent upon a threshold determination that Proposition 65 is a law governing occupational safety and health within the meaning of Proposition 97.

■ Proposition 65 requires that warnings be given to *individuals.* All employees are individuals and thus are entitled to Proposition 65 warnings in the workplace absent an exemption in the law. Although public employers and employers with fewer than 10 employees are exempt from Proposition 65, the proposition contains no exemption for all other persons doing business who expose their employees to carcinogens or reproductive toxins. The Agency, which is the lead agency charged with implementation of Proposition 65, has adopted regulations which expressly apply the warning requirements of the proposition to the work place. Title 22, California Code of Regulations, section 12601, subdivision (c) provides: "Warnings for occupational exposures which include the methods of transmission and the warning messages as specified by this subdivision shall be deemed clear and reasonable. An 'occupational exposure' is an exposure, in the workplace of the employer causing the exposure, to any employee." The regulations also provide that in calculating levels of exposure to carcinogens it shall be assumed that "[f]or workplace exposures, the exposed worker inhales ten cubic meters of workplace air per eight-hour day, forty hours per week, fifty weeks per year over a forty-year period." (*Id.*, title 22, § 12721, subd. (d)(3).)

■ Although the Board concedes that Proposition 65, by its very terms, requires that warnings be given to individuals in the workplace, it contends that Proposition 65 is not a law governing occupational safety and health within the meaning of Proposition 97. This is so, the Board asserts, because Proposition 65 is a statute of general application, requiring warnings to many individuals who are not employees, and because the proposition exempts many workplaces, in contrast to the provisions of Cal/OSHA which apply to "all California working men and women" with the exception of employees of certain employers engaged in interstate commerce and other limited exceptions. (Lab. Code, §§ 6300, 6304, 3300, 3203.) For

purposes of this argument, we accept the Board's assertion that approximately 25 percent of the California work force and nearly 80 percent of all California worksites are not covered by Proposition 65. Nevertheless, it is undisputed that several million California workers are entitled to Proposition 65 warnings in the workplace if the proposition is not preempted by Fed/OSHA. Under these circumstances, we cannot accept the premise that Proposition 65 is not a state law governing occupational safety and health within the meaning of Proposition 97 simply because it also applies outside the workplace and exempts certain employers from its requirements. (See *N.J. State Chamber of Commerce* v. *Hughey* (3d Cir. 1985) 774 F.2d 587, 592-593, rationale adhered to on appeal after remand (3d Cir. 1989) 868 F.2d 621, cert. den. 492 U.S. 920 [106 L.Ed.2d 593, 109 S.Ct. 3246] [New Jersey law analogous to Prop. 65 was an occupational safety and health law to the extent it applied to the workplace].)[8] Fed/OSHA itself contains an exemption for public employers (29 U.S.C. § 652(5)), yet it is unquestionably a law governing occupational safety and health.

■ The Board also contends that Proposition 65 is not a law governing occupational safety and health within the meaning of Proposition 97 because the voters, in approving the relevant provisions of Proposition 97, intended solely to restore California control over private sector safety and health, which was lost when DIR's budget was reduced in 1987 and such control transferred to the federal government. We find it unnecessary to examine the intent of the voters in this context because we find no ambiguity in Proposition 97. It plainly states that the state plan shall be consistent with state laws governing occupational safety and health, including, *but not limited to,* Cal/OSHA.[9] "In ascertaining the meaning of a statute, we look first to the language in which it is framed. (*Leroy T.* v. *Workmen's Comp. Appeals Bd.* (1974) 12 Cal.3d 434, 438 . . . .) If the language is clear, the statute must be enforced according to its terms. (*Ibid.*)" (*AFL-CIO* v. *Deukmejian* (1989) 212 Cal.App.3d 425, 433 [260 Cal.Rptr. 479] [ruling on the required contents of the Governor's list of chemicals published under Proposition 65].) ■ We conclude that the language of Labor Code section 50.7, subdivision (a), requires that the state plan be consistent with Proposition 65 and its implementing regulations.

---

[8] Indeed, if Proposition 65 were not an occupational safety and health law, there could be no prospect of its federal preemption here. "Because [federal] OSHA standards by definition govern occupational safety and health issues, they do not preempt state laws that regulate other concerns." (*N.J. State Chamber of Commerce* v. *Hughey, supra,* 774 F.2d at p. 593.)

[9] We find no merit in the Board's assertion that under the doctrine of *ejusdem generis* Proposition 97 cannot be construed to include Proposition 65 as a law governing occupational safety and health. Proposition 65 is sufficiently similar to the HCS to be embraced in the term "law governing occupational safety and health."

B. *The State Plan Is Not Consistent With Proposition 65.*

Having determined that Proposition 65 is a state law governing occupational safety and health within the meaning of Proposition 97, we must next determine whether the current state plan, which provides for warnings in accordance with the HCS but makes no reference to Proposition 65, is consistent with Proposition 65.

The Board contends that the HCS and Proposition 65 are consistent because they both require warnings to employees about exposure to carcinogens and reproductive toxins. However, at oral argument counsel for the Board conceded that there are situations in which Proposition 65 applies but the HCS does not, either in terms of chemicals covered or levels of exposure triggering warning requirements.[10] For example, petitioners have alleged in the petition, and the Board has admitted, the highly relevant fact that incorporation of Proposition 65 in the present state plan will result in regulation of an additional 66 carcinogens and 18 reproductive toxins not currently so regulated. In our view, the state plan is not consistent with Proposition 65 unless it includes all of the protections afforded by the proposition. That Proposition 65 and the HCS both generally relate to the provision of warnings to employees regarding hazardous substances is simply not sufficient to render the state plan consistent with the proposition.

C. *Other Considerations*

Pursuant to Labor Code section 142.3, subdivision (a), the Board is the only state agency authorized to adopt occupational safety and health standards. Pursuant to our directive in this opinion, the Board shall adopt standards which provide for the protections afforded by the provisions of Proposition 65 which apply to the workplace. The Board may exercise its discretion in fashioning such standards and is not required to simply adopt the regulations issued by the Health and Welfare Agency. We recognize that Proposition 65 and Cal/OSHA provide different enforcement mechanisms. It is the responsibility of the Board in the first instance, not this court, to determine appropriate enforcement procedures for the standards it adopts to make the state plan consistent with Proposition 65.

---

[10] In view of this concession, we conclude that there are no factual issues which must be determined in order for us to rule upon the petition herein. It is not necessary for us to know the precise scope and application of Proposition 65 and the HCS. It is apparent that there are circumstances in which both apply as well as circumstances in which only one of the two applies. Our decision directing the Board to incorporate the provisions of Proposition 65 which apply to the workplace into the state plan will assure that employees are afforded the maximum protection under both statutory schemes (assuming such incorporation is approved by the Secretary).

Pursuant to both Labor Code section 142.3, subdivision (a), and 29 United States Code section 667(c)(2), occupational safety and health standards "when applicable to products which are distributed or used in interstate commerce" must be required by compelling local conditions and must not unduly burden interstate commerce. The Board shall adopt standards pursuant to this opinion which comport with that requirement.[11]

## VIII. *Disposition*

Let a peremptory writ of mandate issue directing respondent Board to adopt and incorporate in the state Cal/OSHA plan occupational safety and health standards which provide for the protections of Proposition 65 applicable to the workplace, and to submit such amendments to the state plan to the Secretary for approval, pursuant to 29 United States Code sections 667(b) and 667(c).

Kline, P. J., and Peterson, J., concurred.

Respondent's petition for review by the Supreme Court was denied October 18, 1990.

---

[11] In its decision denying the petition, the Board stated: "It should be noted . . . that federal law and Labor Code section 142.3 [ ] allow the adoption of standards which, when applicable to products which are distributed or used in interstate commerce, are required by compelling local conditions and do not unduly burden interstate commerce (a 'product standard'). It appears that the incorporation of Proposition 65 provisions into the state plan *could* impose a product standard subject to the interstate commerce provision. This issue *could* ultimately affect the state plan's status as an approved plan. There *appear* to be no 'compelling local conditions' nor readily apparent way to reduce the burden on interstate commerce." (Italics added.) Although the Board made these comments, it did not rest its decision on a "product standard" clause. Therefore, we deem the issue of the potential applicability of such a clause not before us in the present case.