**SHELL OIL COMPANY,**
**et al., Plaintiffs,**

v.

**U.S. DEPARTMENT OF LABOR,**
**et al., Defendants.**

**Civil Action No. 97–1205 (PLF).**

United States District Court,
District of Columbia.

July 12, 2000.

Francis Edwin Froelich, Washington, DC, for Plaintiffs.

Marina Utgoff Braswell, U.S. Attorney's Office, Washington, DC, Kimberly Brown, Powers, Pyles, Sutter & Verville, P.C., Washington, DC, Edward G. Weil, Deputy

Atty. Gen., Cal. Atty. Gen.'s Office, Oakland, CA, for Defendants.

## *OPINION*

PAUL L. FRIEDMAN, District Judge.

Plaintiffs brought this lawsuit to challenge the approval by the Occupational Safety and Health Administration ("OSHA") of an amendment to the California state plan for the development and enforcement of occupational safety and health standards and to challenge OSHA's policy of letting California enforce the amendment before receiving approval. Upon consideration of the parties' cross-motions for summary judgment, the Court concludes that plaintiffs' challenge to OSHA's pre-approval enforcement policy is moot and therefore is no longer properly before the Court. With regard to plaintiffs' challenge to the approval of the amendment, the Court finds that OSHA's actions were not arbitrary, capricious or contrary to law. It therefore will grant summary judgment in favor of defendants.

## I. BACKGROUND

Under the Occupational Safety and Health Act ("OSHAct"), states are generally preempted from regulating any health or safety issue that is governed by a federal OSHA requirement. The sole means by which a state may regulate such issues is for the state to submit a "state plan" to OSHA and for the plan to receive OSHA approval. Under the OSHAct:

> Any State which, at any time, desires to assume responsibility for development and enforcement therein of the occupational safety and health standards relating to any occupational safety or health issue with respect to which a Federal standard has been promulgated under section 655 of this title shall submit a State plan for the development of such standards and their enforcement.

29 U.S.C. § 667(b). Upon approval by OSHA, the state plan "pre-empt[s] federal regulation entirely." *Gade v. National Solid Wastes Management Ass'n,* 505 U.S. 88, 97, 112 S.Ct. 2374, 120 L.Ed.2d 73 (1992).

Criteria for the approval of state plans, and any amendments thereto, are found in Section 18(c) of the OSHAct. *See* 29 U.S.C. § 667(c). Of relevance in this case is Section 18(c)(2), which provides that no plan or amendment can be approved unless it is "at least as effective" in protecting safety and health as the statutes and enforcement regimen of OSHA itself. 29 U.S.C. § 667(c)(2). In addition, if the plan or amendment applies to products that "are distributed or used in interstate commerce," state standards that differ from federal standards must be "required by compelling local conditions" and may not "unduly burden interstate commerce." *Id.*

OSHA initially approved California's state plan in 1973. In 1986, California voters passed Proposition 65, entitled the Safe Drinking Water and Toxic Enforcement Act, requiring new state regulation of toxic chemicals. Among other things, Proposition 65 required that any person doing business in California must give a "clear and reasonable warning" before exposing any individual to "a chemical known to cause cancer." CAL. HEALTH & SAFETY CODE § 25249.6 (West 1999). The provisions of Proposition 65 could be enforced through civil actions brought by the California attorney general, district attorneys, and city attorneys, as well as by private citizens. *Id.* § 25249.7.

Proposition 65 took effect in February 1988, but initially was not made part of California's state plan. In 1990, however, the California Court of Appeals held that the provisions of Proposition 65 must be incorporated into California's state plan. *See California Labor Federation, AFL-CIO v. Occupational Safety & Health Standards Bd.,* 221 Cal.App.3d 1547, 271 Cal.Rptr. 310 (1990). California then drafted an amendment to its state plan incorporating the provisions of Proposition 65 and submitted the amendment to OSHA for approval. Pursuant to long-standing OSHA policy, California was allowed to enforce the modifications to its state plan

prior to OSHA's review and approval of the amendment.

After over four years of discourse between OSHA and the state regarding the proposal, OSHA sought public comment regarding the amendment's approval in late 1996. After receiving and reviewing over 200 public comments, OSHA approved the amendment to the plan in a lengthy decision issued on June 6, 1997—with three conditions: (1) that the existing methods of providing warnings under federal or state hazard communication provisions could be used to provide any necessary warnings under Proposition 65; (2) that the state would take action to ensure that court decisions brought by private citizens would not result in a standard that is less effective than the federal standard; and (3) that the standard would not be enforced against out-of-state manufacturers. *See* 62 Fed.Reg. 31,180 (1997). Plaintiffs immediately filed this lawsuit challenging OSHA's decision.

## II. DISCUSSION

Plaintiffs have moved for summary judgment on three grounds, arguing that OSHA acted unlawfully because: (1) its policy of allowing a state to enforce modifications before approval was not adopted properly under the Administrative Procedure Act and is contrary to the OSHAct; (2) OSHA incorrectly found that the Proposition 65 amendment met the criteria of the OSHAct; and (3) the Proposition 65 amendment improperly regulates maritime employers in violation of the Admiralty Clause of the United States Constitution. Defendants have filed a cross-motion for summary judgment. The Attorney General of California and the California Division of Occupational Health intervened as defendants to contest plaintiff's position. The Court will address each argument in turn.

### A. *Enforcement Before Approval*

Plaintiffs first argue that California should not have been permitted to enforce the amendment to the plan prior to OSHA

approval. In particular, plaintiffs contend that OSHA's policy of allowing pre-approval enforcement is a legislative rule that should have been promulgated using notice and comment procedures. Plaintiffs also contend that the policy is contrary to the clear and unambiguous language of the OSHAct. The Court will not reach either of these issues, however, because OSHA's subsequent approval of the amendment in June 1997 has rendered the question moot.

The undisputed fact is that California is no longer enforcing Proposition 65 without approval. "Where an action has no continuing adverse impact and there is no effective relief that a court may grant, any request for judicial review of the action is moot .... Past exposure to illegal conduct does not itself show a present case or controversy ... if unaccompanied by any continuing, present adverse effects." *Southwestern Bell Tel. Co. v. FCC*, 168 F.3d 1344, 1350 (D.C.Cir.1999) (quoting *O'Shea v. Littleton*, 414 U.S. 488, 495–96, 94 S.Ct. 669, 38 L.Ed.2d 674 (1974)); *see also Branton v. F.C.C,*, 993 F.2d 906, 909 (D.C.Cir.1993) (quoting *City of Los Angeles v. Lyons*, 461 U.S. 95, 103, 103 S.Ct. 1660, 75 L.Ed.2d 675 (1983)) ("[P]ast wrongs do not in themselves amount to that real and immediate threat of injury necessary to make a case or controversy"). Plaintiffs have claimed no continuing adverse effects from California's pre-approval enforcement of Proposition 65.

OSHA's pre-approval enforcement policy nevertheless would be reviewable if it was "capable of repetition, yet evading review." *Southwestern Bell Tel. Co. v. FCC*, 168 F.3d at 1351. The parties agree, however, that OSHA routinely employs this policy, and there is no indication that the issue is evading review. This issue therefore easily could be litigated and resolved in one of the many other instances where OSHA implements the policy. In fact, at least one court has already upheld OSHA's pre-approval enforcement policy in the face of such a challenge. *See Florida Citrus*

*Packers v. California,* 545 F.Supp. 216, 219 (N.D.Cal.1982). Because the question is clearly not "capable of repetition, yet evading review," the issue of OSHA's pre-approval enforcement policy is moot.

### B. Approval

Plaintiffs contest OSHA's approval of the Proposition 65 amendment on several grounds. Plaintiffs first argue that OSHA incorrectly placed the burden of proof on the parties challenging the Proposition 65 amendment. They maintain that because OSHA's decision in this matter was a formal adjudication under the Administrative Procedure Act, the burden of proof was on OSHA. Plaintiffs then argue that OSHA did not meet its burden when it found that (1) the modifications to the state plan were required by compelling local conditions, (2) the modifications did not unduly burden interstate commerce, (3) the state plan modifications were "as effective" as the federal standards, and (4) the modifications satisfied the requirements that the standards be enforced by a state agency and by qualified personnel. Finally, plaintiffs argue that OSHA did not consider all of the relevant factors required by Section 18(c) of the OSHAct. *See* 29 U.S.C. § 667(c).

### 1. Burden of Proof

■ In a formal adjudication, the burden of proof is on "the proponent of the rule or order," in this case OSHA. 5 U.S.C. § 556(d). Despite plaintiffs' arguments to the contrary, however, OSHA's decision to approve Proposition 65 was not a formal adjudication. An adjudication is formal only when the decision is "required by statute on the record after opportunity for an agency hearing." 5 U.S.C. § 554(a). While it is not clear what specific statutory language is required by the APA to trigger a formal adjudication, there must at least be some language instructing the

agency to conduct some sort of hearing. *See United States v. Florida East Coast Railway Co.,* 410 U.S. 224, 241, 93 S.Ct. 810, 35 L.Ed.2d 223 (1973) (formal rule-making required only when the specific phrase "on the record after opportunity for an agency hearing" is contained in statute); *Western Resources, Inc. v. Surface Transp. Bd.,* 109 F.3d 782, 793 (D.C.Cir. 1997) (court found it "doubtful" that statutory requirement to "hold a public hearing" required formal adjudicative procedures); *Chemical Waste Management, Inc. v. U.S. E.P.A.,* 873 F.2d 1477, 1482 (D.C.Cir.1989) (statutory requirement for a "hearing" does not give rise to presumption of formal adjudication).

Section 18 of the OSHAct provides that "[i]f the Secretary *rejects a plan* . . ., he shall afford the state submitting the plan due notice and opportunity for a hearing before so doing." 29 U.S.C. § 667(d) (emphasis added). The OSHAct does not require a hearing if the Secretary *approves* a plan (or an amendment thereto).[1] As the OSHAct does not contain the statutory language necessary to trigger formal adjudicative procedures, the decision in this case was not a formal adjudication and OSHA appropriately placed the burden of proof on the persons challenging the amendment.

### 2. Compelling Local Conditions

Because the labeling requirements of Proposition 65 apply to products that "are distributed or used in interstate commerce," OSHA also must determine that they are "required by compelling local conditions." 29 U.S.C. § 667(c)(2). Plaintiffs argue that OSHA did not properly find that "compelling local conditions" exist because OSHA did not find that there were any "compelling" conditions unique to California. OSHA and California concede that OSHA did not make any findings concern-

---

1. As OSHA described this analysis in its approval of the state plan, "[a] decision to reject the modification works an abrupt change in the status quo and overrides the determination of the sovereign State. A decision to approve, on the other hand, leaves the status quo and the State's determination unchanged. In effect the decision is not to institute the formal trial-type proceedings required for rejection." 62 Fed.Reg. at 31165.

ing any conditions unique to California; instead, they argue that the requirement that OSHA find "compelling local conditions" only requires a finding that there are "compelling conditions which exist locally." 62 Fed.Reg. at 31164. Because hazards resulting from exposure to toxic chemicals are prevalent in California, and because California has more employees potentially subject to hazardous chemicals than other states, *see* 62 Fed.Reg. at 31169, OSHA and California argue that there are compelling reasons in California for Proposition 65.

"For challenges to an agency's construction of the statutes or regulations it administers ... the Court's review must be particularly deferential." *Davis v. Latschar,* 202 F.3d 359, 364 (D.C.Cir.2000). "The Court must defer to the agency's interpretation of a statute that it implements 'so long as it is reasonable, consistent with the statutory purpose, and not in conflict with the statute's plain language.'" *Id.* (quotation omitted); *see also Chevron U.S.A., Inc. v. Natural Resources Defense Council, Inc.,* 467 U.S. 837, 845, 104 S.Ct. 2778, 81 L.Ed.2d 694 (1984). In addition, our court of appeals has specifically noted that OSHA's interpretation of the OSHAct "should not be given a rigid interpretation that would 'prevent States from undertaking ... efforts'" that supplement the federal program of regulation. *American Federation of Labor and Congress of Indus. Organizations v. Marshall,* 570 F.2d 1030, 1037 (D.C.Cir.1978) (quoting *New York State Dept. of Social Services v. Dublino,* 413 U.S. 405, 419, 93 S.Ct. 2507, 37 L.Ed.2d 688 (1973)). Because the plain language of the OSHAct does not unambiguously state whether the "compelling local conditions" must be unique to the state, the Court must evaluate whether OSHA's reading of the statute is reasonable and consistent with the OSHAct's statutory purpose.

■ OSHA's construction of "compelling local conditions" requirement is permissible under the Court's deferential re-

view. OSHA's construction must be viewed against the backdrop of the OSH-Act's apparent intent to allow significant state involvement in the regulation of occupational safety and health. As the court of appeals has recognized, in the application of the OSHAct "there is a likely Congressional contemplation of maximizing use of existing state machinery." *AFL–CIO v. Marshall,* 570 F.2d at 1037. Plaintiff's view of the "compelling local conditions" requirement would allow state regulation only in the extremely rare instances where conditions exist that are completely unique to the state. Such a reading would minimize, not maximize, the "use of existing state machinery" and would be anathema to the OSHAct's scheme of federalism. Once regulatory authority is delegated through the approval of a state plan, the OSHAct is more reasonably read to allow increased state regulation whenever the state regulators identify compelling conditions within their own borders. The Court therefore will defer to OSHA's construction of "compelling local conditions."

As plaintiffs do not contest OSHA's finding that compelling conditions exist within California, the Court concludes that OSHA appropriately found that such conditions justified the adoption of the Proposition 65 amendment.

3. Burden on Interstate Commerce

Plaintiffs contend that the additional labeling requirements imposed by the Proposition 65 amendment "unduly burden interstate commerce," in contradiction of the statutory requirement of the OSHAct that a state plan may not so burden interstate commerce. *See* 29 U.S.C. § 667(c)(2). In particular, plaintiffs argue that the Proposition 65 amendment unduly burdens interstate commerce by imposing additional requirements for product labeling beyond those required by federal standards. Commentors raised this very issue in the administrative process when they argued that Proposition 65 requires warnings for lower levels of exposure to toxic chemicals than the federal standards, that Proposi-

tion 65 does not provide a minimum level of exposure that will trigger the requirements, that Proposition 65 requires labeling for levels lower than the detectable level of the chemical, and that Proposition 65 applies to chemicals not on the federal list of chemicals. *See, e.g.,* Administrative Record ("AR"), Documents 18–150, 18–166, 18–174.

OSHA addressed these and other concerns regarding the effect of the Proposition 65 amendment on interstate commerce in the notice of approval published in the Federal Register. *See* 62 Fed.Reg. at 31172–77. OSHA concluded that there were in fact only a few technical differences between the regulatory scope of Proposition 65 and the federal standards. Most importantly, it concluded that, with a very few exceptions, the chemicals required to have labels under Proposition 65 were also required to have labels under the federal system. *See* 62 Fed.Reg. at 31173–74. While there are chemicals that appear on California's list of chemicals requiring labeling that do not appear on the federal list, OSHA found that these chemicals also require labels under the federal system because the federal system requires warning labels for any chemicals for which "[t]here is statistically significant evidence based on at least one study conducted in accordance with established scientific principles that acute or chronic health effects may occur in exposed employees." 29 C.F.R. § 1910.1200(c). Because any chemical appearing on California's list must have a scientific basis for its inclusion, OSHA found that such chemicals also would require a federal label because "at least one study" would provide evidence of "acute or chronic health effects." *See* 62 Fed.Reg. at 31172–74.

■ Finally, to address any burden that would result from the few technical differ-

ences between the two programs, OSHA required that compliance with the existing methods of providing warnings under the federal and state hazard communication provisions could be used to provide warnings under Proposition 65. *See* 62 Fed. Reg. at 31171–72. OSHA also required that the state standard could not be enforced against any out-of-state manufacturers. *See id.* at 31165–67. As a result, there will be no adverse impact on out-of-state manufacturers as a result of Proposition 65, and California-based manufacturers will be able to continue to use their prior labeling practices. Plaintiffs therefore have not demonstrated that any undue burden on interstate commerce has resulted from the incorporation of Proposition 65 into California's state plan.

### 4. Effectiveness and Other Requirements

Plaintiffs further maintain that the Proposition 65 amendment will not meet a host of other criteria for its approval by OSHA—that it be at least "as effective" as the federal system, that it be enforced by a state agency, and that it be enforced by qualified personnel—because it allows for enforcement through lawsuits brought by private citizens. *See* 29 U.S.C. § 667(c)(1), (2), (4).[2] Plaintiffs argue that the state will have no means of ensuring that these requirements are satisfied if private individuals are permitted to enforce the plan. They argue that there will be a lack of consistency and confusion in enforcement that will compromise health and safety. Plaintiffs' argument, however, ignores the fact that the private enforcement mechanism is only a supplement to the already existing state enforcement mechanisms and that California officials have the primary responsibility for the consistent enforcement of Proposition 65. *See* 62 Fed. Reg. at 31169, 31180. In fact, Proposition

---

2. Contrary to plaintiffs' argument, there is no authority given to private individuals to inspect employers to ensure compliance with the state plan. Under Proposition 65, private individuals simply are given the right to file a

civil complaint to enforce the statute if no prior lawsuit has been brought by public officials. *See* CAL. HEALTH & SAFETY CODE § 25249.7 (West 1999).

65 requires that any private citizen provide 60 days notice to state and local attorneys before bringing a lawsuit, thereby allowing California to inject itself into the lawsuit if necessary to ensure consistency. *See* CAL. HEALTH & SAFETY CODE § 25249.7(d)(1) (West 1999). Nothing in the language of the OSHAct requires that the state's regulatory mechanisms must be the exclusive means for enforcing the state plan.

 California's continuing role in enforcement satisfies the OSHAct's criteria. Because California itself will still implement its state plan, there will be a "state agency" enforcing the plan, and California can ensure that it uses "qualified personnel." Since any private lawyer bringing a citizen suit would enforce the same regulatory scheme as the state, private enforcement should be "at least as effective" as enforcement by state officials, which plaintiff in turn does not contest is "at least as effective" as federal enforcement. In addition, to ensure that no private enforcement efforts render the Proposition 65 amendment less effective than the federal standards, OSHA expressly required that California interject itself in private enforcement actions when necessary to ensure that the private actions do not "result in a less effective standard." *See* 62 Fed. Reg. at 31168. The Court therefore concludes that OSHA did not act in an arbitrary and capricious manner when it concluded that the Proposition 65 amendment was "as effective as" the federal standards, would be enforced by a state agency, and would be enforced by qualified personnel.[3]

### C. Admiralty Clause

Plaintiffs' final argument is that the Proposition 65 amendment applies to maritime employers in violation of the Admiralty Clause of the Constitution. The Admiralty Clause provides that federal judicial power "shall extend ... To all Cases of admiralty and maritime Jurisdiction." U.S. CONST. Art. III, § 2, cl. 1. Plaintiffs base their Admiralty Clause argument on two Supreme Court cases that held that the federal courts have exclusive jurisdiction over cases that involve maritime employment. *See Southern Pacific Co. v. Jensen*, 244 U.S. 205, 37 S.Ct. 524, 61 L.Ed. 1086 (1917); *Knickerbocker Ice Co. v. Stewart*, 253 U.S. 149, 40 S.Ct. 438, 64 L.Ed. 834 (1920).

 These two cases, however, "have been confined to their facts, *viz.*, to suits relating to the relationship of vessels, plying the high seas and our navigable waters, and to their crews." *Askew v. American Waterways Operators, Inc.*, 411 U.S. 325, 344, 93 S.Ct. 1590, 36 L.Ed.2d 280 (1973); *see id.* at 338–44, 93 S.Ct. 1590. Since *Askew*, general state regulation that affects maritime commerce and regulation has been universally upheld when it does not clearly conflict with federal law. *See Ray v. Atlantic Richfield Co.*, 435 U.S. 151, 157–58, 98 S.Ct. 988, 55 L.Ed.2d 179 (1978); *Douglas v. Seacoast Products, Inc.*, 431 U.S. 265, 278, 97 S.Ct. 1740, 52 L.Ed.2d 304 (1977). Because the Proposition 65 amendment would not conflict with federal regulation, and because it does not discriminate against maritime employers, it does not run afoul of the Admiralty Clause. *Jensen* and *Stewart* therefore do not reach the regulatory scheme at issue in this case.[4]

SO ORDERED.

**3.** As almost an aside, plaintiffs also argue that OSHA's approval was deficient because it did not consider all of the factors outlined in Section 18(c) of the OSHAct. Every argument made by plaintiffs under Section 18(c) of the OSHAct, however, was addressed in the Federal Register notice. *See* 62 Fed.Reg. at 31178–80 (countering plaintiffs' arguments

under Section 18(c)(1), (c)(3) and (c)(4)). In fact, the notice in the Federal Register discusses each of the criteria under Section 18 that could potentially apply to a modification. The Court therefore concludes that OSHA considered all of the relevant factors.

**4.** Plaintiffs further argue that *American Dredging Co. v. Miller*, 510 U.S. 443, 114 S.Ct. 981,

127 L.Ed.2d 285 (1994), has revitalized the Admiralty Clause since the *Askew* decision. *American Dredging* concerned the application of the doctrine of *forum non conveniens* to a seaman's claim for compensation for a work-related injury. While the Supreme Court in *American Dredging* chose not to overrule *Jensen* and *Knickerbocker sua sponte, see American Dredging Co. v. Miller*, 510 U.S. at 447 n. 1, 114 S.Ct. 981, it did nothing to expand the scope of those decisions or "revitalize" them. First, *American Dredging* concerned an injury to the crew of a vessel—something that even *Askew* included among the limited scope of the *Jensen* and *Knickerbocker* decisions. Second, even in this area of the law where *Jensen* and *Knickerbocker* were supposed to control, the Court in *American Dredging* declined to find that Louisiana *forum non conveniens* law was pre-empted by the Admiralty Clause.